JjSTEVEN R. PLOTKIN, Judge.
Defendant, American National Property and Casualty Company (hereinafter referred to as “ANPAC”) appeals the trial court’s denial of the Motion to Enforce Settlement. For the reasons discussed below, we affirm.
*104 STATEMENT OF FACTS
This case arises out of an accident which occurred on February 27, 1997, at the intersection of LA 46 and Chalmette Avenue in the Parish of St. Bernard. Plaintiff, Thu Ngoc Tran, was the operator of a vehicle which was involved in a collision with a Cadillac operated by Delores E. Lucas and owned by Emile B. Bouan-chaud. The Cadillac was insured by defendant, Allstate Insurance Company. Both Mrs. Tran and her passenger were injured and Mrs. Tran’s car was damaged to the point where it could not be used. Plaintiff filed suit in Civil District Court for the Parish of Orleans against Emile B. Bouanchaud, Delores E. Lucas, Allstate Insurance Company, the alleged liability insurer of Emile B. Bouanchaud and Delores Lucas, and ANPAC, the underin-sured motorist carrier of the plaintiff. ANPAC filed an Exception of Improper Venue which was denied.
[aA jury trial was set for June 28, 2000. At that time, plaintiff advised the court that she was reducing her demand below $50,000. Plaintiff and her counsel signed, dated and filed a Certification That the Amount in Dispute Does not Exceed $50,000 and Request for a Bench Trial. Allstate Insurance Company has limits of $100,000 on its policy. ANPAC requested that it be dismissed from these proceedings because Allstate had sufficient insurance limits to cover the damages. Plaintiff refused to dismiss ANPAC voluntarily without payment of settlement. While at court plaintiff and ANPAC allegedly made an oral agreement to settle any and all claims of plaintiff for $775, with plaintiff reserving any and all of her rights against the other defendants. Plaintiffs counsel orally transmitted this offer to plaintiff through a Vietnamese interpreter and plaintiff orally indicated to her attorney that she was willing to accept the offer. Plaintiffs counsel orally advised ANPAC’s counsel of plaintiffs response. None of this exchange occurred in open court or on the record. The trial date of June 28, 2000 was continued without date and reset as a bench trial.
Plaintiff was subsequently examined by an orthopedist and a MRI was performed. Dr. David Aiken reported that the patient has no objective abnormality on physical examination, x-ray examination, or MRI scanning of her neck. The films of a cervical MRI scan showed very mild dehydration of all the cervical discs. Dr. Meyer also examined the plaintiff, finding a simple bulge on the order of 1-2 mm.[1] Plaintiff claims that this made it evident that the claim for personal injuries could well exceed the $100,000 limit of liability insurance.
In a letter dated July 25, 2000, counsel for defendant said that plaintiff had agreed to settle any and all claims against AN-PAC for $775. Defense counsel | ¡^enclosed an IRS Form W-9 for plaintiffs attorney to sign and return prior to the forwarding of the settlement check. Plaintiffs counsel responded to this letter in writing and returned the completed and executed W-9, signed by counsel for plaintiff, with a transmittal letter. The letter from plaintiffs counsel, dated July 28, 2000, said “as requested, enclosed please find a completed and executed W-9. Hoping this letter finds you in good health and spirits.” Upon receiving this, counsel for ANPAC sent receipts, releases, a joint motion and order to dismiss, and a check for $775 to *105 plaintiffs counsel.[2] When these documents were not returned to ANPAC, defense counsel filed a Motion to Enforce Settlement.
On appeal, ANPAC claims that a settlement agreement evidenced in writing can be signed either by the party in question or by the party’s attorney, as the authorized agent.
Settlement agreement
The statute that is at issue in this case is Louisiana Civil Code article 3071 which provides:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
The defendant argues that the settlement agreement was confirmed in writing on July 25, 2000 by counsel for ANPAC. The defendant also claims that | ¿the plaintiff agreed to sign full and complete receipts and releases in favor of ANPAC and agreed to authorize her attorney to permit the filing of a motion to dismiss any and all of her claims against ANPAC. The defendant further contends that plaintiff counsel accepted the terms of the settlement by responding in writing to the confirmation of the settlement memorialized by counsel for defendant. Plaintiffs counsel did not indicate that the settlement offer was accepted or that Mrs. Tran agreed to the terms offered by the defendant.
The trial judge held that Sullivan v. Sullivan, 95-2122 (La.4/8/96) 671 So.2d 315, prohibits the granting of the Motion to Enforce Settlement where “under Article 3071, for a transaction or compromise to be valid and enforceable, it must either be recited in open court and capable of being transcribed from the record of the proceeding, a situation we are not presented with, or it must be reduced to writing and signed by the parties or their agents.” Sullivan v. Sullivan, p. 4, 671 So.2d at 317. In the instant case, the discussion between the parties did not occur in open court. While there were letters transmitted by the attorneys for the parties there is no evidence that both parties or their agents ever signed a settlement agreement. Although the Sullivan court stated that the writing must “signed by the parties or their agents” in the analysis of the case that court held such a writing did not become valid and enforceable under Article 3071 until both parties signaled their voluntary consent to the settlement by signing the written document encompassing the terms of the oral agreement. In applying Sullivan the court in Lavan v. Nowell, 98-0284 (La.04/24/98), 708 So.2d 1052 held that a writing needs to be signed by both parties in order to satisfy Article 3071. The Sullivan court held that “until the parties signed a written document or documents evincing their consent to the terms of their earlier oral agreement, either party was | ¡free to change his or her mind.” Sullivan v. Sullivan, p. 5, 671 So.2d at 318. In the instant case it is clear *106 that the plaintiff never signed any of the correspondence or other documents concerning a settlement agreement.
This Court recognized in Dammann v. Molero, 97-1944 p. 3 (La.App. 4 Cir. 3/18/98) 709 So.2d 344, 345, “Although attorneys are presumed to have the authority to negotiate a settlement proposal for their clients, attorneys may not enter into a binding agreement without their client’s clear and express consent.” There is nothing in the record to indicate that the plaintiff ever gave her attorney the express consent necessary to accept the terms of this settlement. The conversation that allegedly occurred between the parties does not satisfy this requirement. There is nothing in the record indicating that the plaintiff ever signed a document approving the settlement with ANPAC. Given that the terms of the settlement were not reduced to writing and signed by all of the parties, there is not an enforceable settlement agreement.
CONCLUSION
The trial court did not err in denying the Motion to Enforce Settlement. The facts of this case do not indicate that the parties had signed a written document evidencing their consent to the terms of the oral agreement.
Accordingly, the trial court judgment is hereby affirmed.
AFFIRMED.

. Dr. Johnson referred to the patient as Mr. Thu N. Tran and kept using "he” in the letter sent to Dr. Meyer.

. At oral argument plaintiff's counsel informed the Court that the draft was cashed and the proceeds placed in his trust account.