STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-428

DEBRA GOUTIERREZ

VERSUS

OCTA GOUTIERREZ

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 87110 K
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and J. David Painter, Judges.

AFFIRMED.

Amy, J., concurs.

Paul Gonsoulin Moresi, III
Attorney at Law
P. O. Box 1140
Abbeville, LA 70511-1140
(337) 898-0111
COUNSEL FOR DEFENDANT APPELLANT:
    Octa Goutierrez

**Steven J. Diebold**
**Champagne & Brumbaugh**
**P. O. Box 3764**
**Lafayette, LA 70502-3764**
**(337) 233-4414**
**COUNSEL FOR PLAINTIFF APPELLEE:**
    **Debra Goutierrez**

**SAUNDERS, Judge.**

This is a domestic case wherein the husband transferred his community share of the marital home to his wife. After Hurricane Rita damaged the home, the wife signed a cash sale of the home to her husband dated January 23, 2006. Prior to the husband recording this sale, according to the wife, they orally agreed to dissolve the sale so she could seek a grant under the Road Home program. After receiving the grant, the husband then filed the January 23, 2006 cash sale and began living in the home.

The trial court allowed the wife to testify regarding the dissolution of the cash sale under our supreme court's ruling in *Frank v. Motwani*, 513 So.2d 1170 (La.1987). The trial court then reached a judgment that, *inter alia*, found the marital home was the separate property of the wife and that the husband was subject to being held in contempt of court should he fail to follow the court's judgment.

The husband appeals this judgment. We affirm.

## FACTS AND PROCEDURAL HISTORY:

Octa Goutierrez, Jr. (Octa) and Debra Goutierrez (Debra) were married on September 10, 2004. On December 31, 2004, the couple acquired a marital home. On January 5, 2005, Octa transferred his share of the marital home to Debra. Finally, on January 23, 2006, Debra, at this point the sole owner of the marital home, sold it to Octa. According to Debra, the January 23, she and Octa dissolved the 2006 sale so that she could apply for a grant from the Road Home program. The January 23, 2006 sale was not recorded until August 29, 2007, after Debra filed for divorce on June 22, 2007. The couple divorced on March 4, 2008.

On May 13, 2008, Octa filed a petition for partition of community property. A judgment was reached by the trial court on May 8, 2009. Octa appealed to this

court, and we vacated the trial court's judgment and remanded the case for further proceedings for issues not relevant to this opinion.[1]

After remand, this matter was tried a second time on October 18 and 19, 2010. On October 7, 2011, a judgment was signed awarding Debra the former marital home and stating that Octa needed to comply with the judgment or be subject to being found in contempt of court. Octa appealed this judgment and raised the following four assignments of error:

> 1. The [Trial] Court exceeded its authority and therefore committed error by determining ownership of the former marital home, which was not properly before the Court[.]
>
> 2. The [Trial] Court erred in allowing the introduction of parole evidence to effect the revocation of the sale of the former marital home to [Octa], an immovable that had previously been conveyed to him by [Debra] by authentic act[.]
>
> 3. The [Trial] Court committed error in ruling that [Debra] had discharged her burden of proof regarding the alleged revocation of the sale of the former marital home to [Octa.]
>
> 4. The [Trial] Court exceeded its authority by ordering [Octa] to comply with its decision under the penalty of contempt of court[.]

## ASSIGNMENT OF ERROR NUMBER ONE:

Octa contends in his first assignment of error that the trial court exceeded its authority and therefore committed error by determining ownership of the former marital home, which was not properly before it. We find no merit in this contention.

Octa cites La.Code Civ.P. arts. 862 and 1154 along with jurisprudence concerning application of these two articles. His argument is that the trial court had no authority to rule on who owned the marital home because he never consented to the expansion of the pleadings in this case to enable the trial to rule on who owns the marital home.

---

[1] See *Goutierrez v. Goutierrez*, 03-1360 (La.App. 3 Cir. 4/7/10), 34 So.3d 1058.

Debra stated the following in Paragraph 10 of her original petition (emphasis added):

> **Plaintiff avers that the family home is her separate estate**, and she desires and is entitled to be awarded the exclusive use of it and its furnishings and appliances during the pendency of these proceedings. Defendant's earnings and capacity to earn income to pay for living in other quarters are substantially greater than those of Plaintiff.

Likewise, Octa, in an early filing to the trial court, stated the following (emphasis added):

> NOW INTO COURT comes defendant, OCTA GOUTIERREZ, JR., who requests that the Court determines the following matters incidental to this divorce action:
>
> . . . .
>
> 4.
>
> Petitioner desires and is entitled to the exclusive use of the former marital home located at 301 Canal Street, Delcambre, Louisiana, **which forms part of his separate estate**.

Clearly, Octa's contention that the pleadings should not have been expanded to adjudicate the ownership of the family home is misguided. The pleadings cited above specifically raise the issue of who was the rightful owner of the former marital home. Therefore, Octa's consent to expansion of those pleadings to include something that they already include is not relevant. Accordingly, this assignment of error is without merit.

## ASSIGNMENTS OF ERROR NUMBER TWO:

Next, Octa avers that the trial court erred in allowing the introduction of parole evidence to effect the revocation of the sale of the former marital home to him. We must uphold the trial court's findings.

The standard of review applicable to the propriety of admission of parol evidence by a lower court is that of abuse of discretion. *Bennett v. Porter*, 10-1088 (La.App. 3 Cir. 3/9/11), 58 So.3d 663. Louisiana Civil Code Article 1848 states:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.

"A sale or promise of sale of an immovable must be made by authentic act or by act under private signature, except as provided in Article 1839." La.Civ.Code art. 2440. "A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath." La.Civ.Code art. 1839.

Here, Debra and Octa agree that Debra was the sole owner of the former marital home prior to January 23, 2006. Both agree that on that date, January 23, 2006, Octa became the owner of the former marital home via a cash sale confected by an authentic act. Thereafter, prior to this cash sale being recorded, the parties disagree whether the January 23, 2006 cash sale was revoked.

The trial court admitted parol evidence in the form of Debra's testimony that she and Octa agreed to revoke the January 23, 2006 cash sale orally so that she could apply for a grant from the Road Home Program set up to help victims of Hurricanes Katrina and Rita. Octa could not qualify for the program if he were sole owner of the home while Debra could qualify is she were the sole owner. Octa filed a motion in limine to prevent this testimony from being admitted into evidence, but this motion was denied by the trial court.

The trial court based its denial of Octa's motion on our supreme court case of *Frank*, 513 So.2d 1170. There, our supreme court held that "a writing is not required to cancel a contract which has to be in writing to be valid." *Id.* at 1172.

Our supreme court's ruling in this case was criticized by the late Professor Saúl Litvinoff wherein he wrote:

> [W]hen the law requires written form for a particular kind of contract, that form should also be required for the dissolution of such a contract. That is so because, as contemplated by the Louisiana Civil Code, contract-dissolution by the parties' consent is also a contract—one that has as its object the extinguishment of an obligation. Whether written form is required for cautionary or evidentiary purposes, the same policy reasons that prompt the lawmaker to prescribe a formality for the making of a certain kind of contract also prevail for the dissolution of such a contract, since great uncertainty concerning the stability of transactions would result otherwise. For those reasons, testimonial proof should not be admissible to prove the oral dissolution of a contract the parties executed in writing because the law so requires.
>
> Nevertheless, the Louisiana jurisprudence has reached a different conclusion and asserted that written contracts to sell immovable property may be orally dissolved by the parties. Though the particular circumstances of the cases where that conclusion prevailed may justify the pertinent decisions, it is clear that such conclusion should not be generalized. For example, if a contract to sell immovable property is property recorded, it is hard to see how the oral dissolution of that contract could fairly be made effective against third parties. Likewise, if a true transfer of immovable property has taken place through a written contract, a dissolution of that contract amounts to a re-transfer or retrocession of that property, which by all means requires a writing.

5 Saúl Litvinoff, LOUISIANA CIVIL LAW TREATISE: THE LAW OF OBLIGATIONS, §12.99 (2001) (footnotes omitted).

Professor Litvinoff was one of the great scholars who taught generations of Louisiana lawyers and judges. His understanding of, and writings on, the Louisiana Civil Code form part of our jurisprudential heritage and have been an invaluable aid to lawyers and judges for decades. See *Dore' Energy Corp. v.*

*Massari*, 04-659 (La.App. 3 Cir. 11/10/04), 887 So.2d 691, *writ denied*, 04-2996 (La. 2/18/05), 896 So.2d 33.

Nevertheless, when jurisprudential writings and well settled supreme court jurisprudence conflict, we are mandated to follow the lead of our supreme court. Therefore, we find no error by the trial court in following *Frank* to allow Debra to admit parol evidence as to the dissolution of the written agreement to sell the former marital home to Octa confected via authentic act. Accordingly, we find no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In his third assignment of error, Octa claims that the trial court erred in ruling that Debra carried her burden to prove the alleged revocation of the sale of the former marital home to Octa. We find no merit to this claim.

"[F]actual findings of the trier of fact are entitled to great weight on appeal and, when there is a conflict in testimony, reasonable inferences of credibility and reasonable inferences of fact made and drawn by the trier of fact are not to be disturbed on appeal." *Arceneaux v. Adams*, 366 So.2d 1025, 1027 (La.1978) (citing *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973)).

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Lirette v. State Farm Ins. Co.*, 563 So.2d 850, 852 (La.1990) (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Canter*, 283 So.2d 716; *Virgil v. American Guarantee & Liability Ins. Co.*, 507 So.2d 825 (La.1987); and *Boulos v. Morrison*, 503 So.2d 1 (La.1987). ).

Here, the trial court found Debra to be credible regarding the dissolution of the January 23, 2006 cash sale while asserting that Octa was not credible on this issue.

Debra testified to the following regarding the dissolution of the January 23, 2006 cash sale:

Q    And then subsequent to the execution or the signing of the sale and the payment that you received on January - - on or about January 23, 2006, what happened next with regard to that sale?

A    He didn't want - - after he found out how much it was going to be to fix the house, he didn't - -

Q    When you say, "he," you're referring to - -

A    Octa. He didn't want to borrow that much money, so we decided we were going to start getting donations, and he didn't file the bill of sale. He said he would never file the bill of sale. When Road Home came along and he didn't qualify for money, I did because I owned the house at the time of the storm, he could not file for Road Home. He didn't borrow any money because he said it was too much money to fix it.

Given this testimony and the trial court's determination that Debra was credible, it decision that Debra carried her burden of proof on this issue is supported by the record. Accordingly, we find no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

In his final assignment of error, Octa complains that the trial court exceeded its authority by ordering him to comply with its decision under the penalty of contempt of court. We find this assignment of error fails to raise an issue we can adjudicate.

Octa argues that the trail court cannot predetermine that he is in contempt of court prior to having a hearing under La.Code Civ.P. art. 225 should he not comply with the judgment. Octa is correct. However, the judgment of the trial court states that Octa "will be subject to being held in contempt of court for failure to make the payments as ordered." This statement does not state that Octa will be held in contempt of court. Rather, it states that he is subject to being held as such, i.e. after a hearing. Accordingly, we find this assignment of error lacking in substance.

## CONCLUSION:

Octa Goutierrez raised four assignments of error. We found no error by the trial court in reaching its judgment. All costs of these proceedings are assessed to Octa Goutierrez.

**AFFIRMED.**