STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

14-450


BETTY HEBERT GEER, KAREN WHEAT,
HEBERT-GEER COMPANY, LLC, AND
DOROTHY HEBERT TOLBERT

VERSUS

BP AMERICA PRODUCTION COMPANY,
W & T OFFSHORE, INC., AND
HOUSTON OIL & GAS COMPANY, INC.


\*\*\*\*\*\*\*\*\*\*\*\*


APPEAL FROM
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-18439
HONORABLE PENELOPE RICHARD, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


JAMES T. GENOVESE
JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of J. David Painter, James T. Genovese, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**James P. Dore′**
**Alan J. Berteau**
**Kean Miller, LLP**
**II City Plaza**
**400 Convention Street, Suite 700**
**Post Office Box 3513**
**Baton Rouge, Louisiana 70821**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **BP America Production Company**

**Jacob L. Johnson**
**The Law Office of Jacob L. Johnson, L.L.C.**
**148 Edna Road**
**Grand Lake, Louisiana 70607**
**(337) 263-7579**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **BP America Production Company**

**Donald T. Carmouche**
**Victor L. Marcelllo**
**John H. Carmouche**
**William R. Coenen, III**
**Brian T. Carmouche**
**Todd J. Wimberley**
**Ross J. Donnes**
**D. Adele Owen**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, Louisiana 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
      **Betty Hebert Geer, Karen Wheat,**
      **Hebert-Geer Company, LLC, and**
      **Dorothy Hebert Tolbert**

**Chad E. Mudd**
**David P. Bruchhaus**
**M. Keith Prudhomme**
**Mudd & Bruchhaus, L.L.C.**
**410 E. College Street**
**Lake Charles, Louisiana 70605**
**(337) 562-2327**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
      **Betty Hebert Geer, Karen Wheat,**
      **Hebert-Geer Company, LLC, and**
      **Dorothy Hebert Tolbert**

**Leonard Knapp, Jr.**
**A Professional Law Corporation**
**1109 Pithon Street**
**Post Office Box 1665**
**Lake Charles, Louisiana 70602-1665**
**(337) 439-1700**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Betty Hebert Geer, Karen Wheat,**
    **Hebert-Geer Company, LLC, and**
    **Dorothy Hebert Tolbert**

**Winfred Thomas Barrett, III**
**3401 Ryan Street, Suite 307**
**Lake Charles, Louisiana 70605**
**(337) 474-7311**
**COUNSEL FOR INTERVENORS/APPELLEES:**
    **Marck Smythe and Glenn W. Alexander**

**GENOVESE, Judge.**

Defendant, BP America Production Company (BP), appeals the trial court's grant of a motion to enforce a settlement agreement filed on behalf of Plaintiffs, Karen Wheat, individually and in her capacity as executrix for the Succession of Betty Hebert Geer, the Hebert-Geer Company, LLC, Nancy M. Toerner, Dorothy Hebert Tolbert, and Intervenors, Marck Smythe[1] and Glenn W. Alexander. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs and Intervenors (collectively referred to as Geer) are landowners who instituted this lawsuit against BP and others[2] for damages to their property located in Calcasieu Parish, allegedly caused by oil and gas exploration and production on their property. The matter was scheduled for trial on the merits for January 21, 2013. On January 4, 2013, Geer's counsel advised the trial court that following mediation, the parties had reached "a tentative agreement to resolve the litigation[;]" thus, they had mutually agreed to continue the trial, and they "expect[ed] to have a completed settlement document in the very near future."

In the ensuing months, the parties' counsel exchanged drafts of a proposed written settlement agreement. On June 19, 2013, pursuant to La.R.S. 30:29(J)(1),[3]

---

[1]We note that the Petition to Intervene names "Marck Smythe," whereas subsequent pleadings name "Mark Smyth."

[2]All claims of Plaintiffs and Intervenors against Defendants, W & T Offshore Inc., Houston Oil & Gas Company, Inc., Tracy W. Krohn and Davies Construction, LLC, as successor to Davies Construction Inc., were dismissed by court order dated December 20, 2012.

[3]Louisiana Revised Statutes 30:29(J)(1) provides, in relevant part:

> In the event that any settlement is reached in a case subject to the provisions of this Section, the settlement shall be subject to approval by the court. The [Louisiana Department of Natural Resources] and the attorney general shall be given notice once the parties have reached a settlement in principle. The [Louisiana Department of Natural Resources] shall then have no less than thirty days to review that settlement and comment to the court before the court certifies the settlement.

correspondence authored by counsel for BP was sent to the Louisiana Department of Natural Resources (LDNR) stating:

> Enclosed is a settlement agreement between plaintiffs and BP America Production Company ("BP") in the above referenced case. This agreement has not yet been signed by the parties, but the substantive provisions regarding any work to be done on the property will not be changed. The settlement contemplates a cash payment to plaintiffs, with BP assuming primary cleanup responsibility for the west side of the property. A settlement between plaintiffs and W&T/Houston that contemplated cleanup of the east side of the property by Houston has previously been submitted. Your office has already issued a letter of no objection with respect to the W&T/Houston settlement.

As indicated therein, the settlement agreement was attached thereto.[4] On July 31, 2013, LDNR issued a "no objection" letter to the trial court relative to the settlement agreement.

On August 19, 2013, Geer filed a Motion for Approval of Settlement between Plaintiffs and BP America Production Company with the trial court, and a hearing on the motion was scheduled for August 28, 2013. On August 27, 2013, counsel for BP notified Geer's counsel that BP would not approve the settlement agreement.

On August 28, 2013, a Motion to Enforce Settlement between Plaintiffs and BP America Production Company was filed on behalf of Geer. On January 8, 2014, the trial court heard Geer's motion. Overruling objections raised by BP as to the use of parol evidence, the trial court admitted several attachments to Geer's motion relative to a settlement agreement and provided the following oral reasons:

> The Court finds that there was a meeting of the minds on this settlement and that when it was presented to them - - Louisiana Department of Natural Resources, on June 19th, it was clear it was a settlement agreement.

---

[4]Notably, the drafts of the settlement agreement, when exchanged between counsel, contained a watermark stating "DRAFT RE SETTLEMENT DISCUSSION PURPOSES ONLY[;]" however, this watermark had been removed and did not appear on the document forwarded to LDNR for its approval.

The unique procedures set out in Act 312 does [sic] not require the settlement to be signed before its sent to the DNR and not signed before the Court approves it. But there was clearly a meeting of the minds[,] and it is a settlement. And I will enforce the settlement as written.

Accordingly, the trial court granted Geer's motion to enforce settlement and signed a concomitant judgment on January 22, 2014. BP appeals.

## ASSIGNMENTS OF ERROR

BP presents the following assignments of error for our review:

Assignment of Error No. 1: The Trial Court erred in considering parol evidence to determine whether the parties had reached a compromise, and what that compromise stated.

Assignment of Error No. 2: The Trial Court erred in finding that a compromise, as defined in [La.Civ.Code arts. 3071, and following,] had been reached between [Geer] and BP America Production Company.

Assignment of Error No. 3: The Trial Court erred in holding a binding and enforceable compromise is created when an unsigned draft of a proposed compromise agreement is submitted to the Louisiana Department of Natural Resources pursuant to [La.]R.S. 30:29(J)(1).

## LAW AND DISCUSSION

In its first assignment of error, BP asserts that the trial court erroneously admitted and considered parol evidence in determining whether the parties had reached a settlement agreement in this case and what constituted the terms of said agreement. We disagree.

The evidence introduced in support of the motion to enforce the settlement was not admitted for the purposes of showing that there was an intent to settle. As argued by Geer, "[h]ere BP seeks by application of the parol evidence rule to exclude evidence of the very writings that constitute the written compromise itself. Under this wrongheaded argument, no compromise or settlement could ever be

3

proven except in cases where all parties sign a single settlement document." As discussed below, that is not what the jurisprudence holds.

In the instant case, the emails between counsel showed the totality of what transpired. The parties mediated the case and reached a tentative settlement agreement. They then requested that the trial court remove the case from the court's trial docket. Drafts were then exchanged between counsel. Pursuant to the mandate of La.R.S. 30:29(J)(1), the agreement was then submitted to LDNR for the issuance of a "no objection" letter before submission to the trial court for its approval. For the foregoing reasons, we find no abuse of the trial court's discretion in admitting the attachments in support of Geer's motion.[5]

In its second assignment of error, BP asserts that the trial court erred in concluding that Geer and BP had reached a compromise as defined by La.Civ.Code arts. 3071, and following. We review the trial court's determination that there existed a valid and enforceable settlement agreement pursuant to the manifest error/clearly wrong standard of review. *Klebanoff v. Haberle*, 43,102 (La.App. 2 Cir. 3/19/08), 978 So.2d 598. "This is because the existence or validity of a compromise depends on a finding of the parties' intent, an inherently factual finding." *Id.* at 601 (citing *Kelly v. Owens*, 29,613 (La.App. 2 Cir. 8/20/97), 698 So.2d 757, *writ denied*, 97-2311 (La. 12/12/97), 704 So.2d 1193). For the reasons discussed below, we find no error in the trial court's ruling.

Louisiana Civil Code Article 3071 defines a compromise as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." Louisiana Civil Code Article 3072 provides that "[a] compromise shall be made in

---

[5]"The standard of review applicable to the propriety of admission of parol evidence by a lower court is that of abuse of discretion." *Goutierrez v. Goutierrez*, 12-428, p. 4 (La.App. 3 Cir. 11/7/12), 102 So.3d 1047, 1051, *writ denied*, 12-2655 (La. 3/1/13), 108 So.3d 1177 (citing *Bennett v. Porter*, 10-1088 (La.App. 3 Cir. 3/9/11), 58 So.3d 663).

4

writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings."

In this case, BP maintains that because there was no open court recitation of a settlement agreement, a writing signed by both Geer and BP was required. BP contends that the June 19, 2013 version of the settlement agreement relied upon by the trial court contained no signatures and that Geer's signature on "individual signature pages" was insufficient to satisfy the writing requirement.

Based upon our review of the record, we find no manifest error in the trial court's determination that a valid compromise had been reached between Geer and BP. First, there was "a meeting of the minds" as to the agreement of the parties as evidenced by the emails between the attorneys. Clear evidence that there was in fact a "meeting of the minds" between the parties is contained in the exchanges predating the settlement agreement forwarded to LDNR.

On June 17, 2013, Will Coenen, counsel for Geer, emailed Alan Berteau, counsel for BP: "Alan, do you have the final draft of the agreement[?]" Minutes later, Berteau responded: "Will get it to you today." Approximately two hours later, Berteau emailed Coenen with the referenced attachments thereto stating: "Will, here are the settlement draft[] and the settlement notice to be recorded. We need to add the signature pages to the settlement agreement; my secretary's gone so it'll be first thing tomorrow before I can get that to you." Thereafter, on that same afternoon, the attorneys discussed changes made to prior drafts which were reviewed and accepted. Just minutes after 5:00 p.m., Berteau emailed Coenen: "Fair enough. Then let's go with it. We'll finalize it tomorrow and get it submitted to LDNR." Coenen responded moments later: "Alan, the notice of settlement is fine. I forgot to mention that in my last email." Additionally, within minutes, Coenen emailed Berteau, for his approval, the letter to be forwarded to LDNR and

5

the assistant attorney general involved in the case submitting the settlement agreement. Berteau promptly responded: "That's fine. Can you share a copy of the 'no objection' letter re: W&T's settlement?" Lastly, at 6:02 p.m., Coenen emailed Berteau relative to the letter directed to LDNR: "Let's send out tomorrow. I[']ll b[e] out but have someone sign[.]" The following day, Coenen's secretary confirmed that Berteau's office was delivering the letter to LDNR that afternoon. Coenen then emailed Berteau requesting that he forward him a copy of the letter sent to LDNR, and Berteau agreed to do so.

The settlement agreement was forwarded to LDNR by counsel for BP as the attorneys had discussed. In Berteau's letter to LDNR, he expressly identifies the document as the "settlement agreement" which was the subject of negotiations and the topic of the foregoing emails. Given the foregoing, we find it is disingenuous for BP to now claim that there was no "meeting of the minds" or settlement in the face of its attorney's repeated representations via emails to opposing counsel and BP counsel's own express representation to LDNR that the document it submitted was the agreement of the parties for which they sought LDNR's approval and issuance of a "no objection" letter to the trial court. We agree with Geer that in so doing, "BP made an explicit representation to the LDNR under [La.R.S.] 30:29(J) that it had reached a meeting of the minds with the plaintiffs."

BP also argues to this court that the settlement document forwarded to LDNR and relied upon by the trial court contained redactions and was incomplete. Geer acknowledges that there were redactions to the settlement agreement submitted to LDNR on June 19, 2013, some of which were required by the confidentiality provisions of the agreement itself. However, an unredacted version containing the dollar amount of the settlement was sent by counsel for BP to counsel for Geer just two days later. On that date, Geer's counsel emailed BP's

6

counsel requesting a complete unredacted version so that he could proceed with obtaining signatures. BP's counsel responded by attaching the requested document and stating, via email: "Here's the settlement agreement. Note we need signatures on both the agreement and 'Exhibit A.' Thanks."[6]

Additionally, BP argues that even if the parties had achieved a meeting of the minds, there was no signed writing; thus, there was no valid compromise. BP contends that Geer is unable to "identify any writing which can serve that function in the present case." Additionally, BP notes that the settlement agreement forwarded to LDNR on June 19, 2013, was unsigned and that no other completed signed copy was introduced. Lastly, BP contends that Geer failed to show that BP's counsel had the authority to enter into the settlement. We disagree.

Having found sufficient evidence that there was a meeting of the minds and a settlement between Geer and BP, we further find that the emails exchanged between counsel are sufficient under the jurisprudence to satisfy the requirement that the writing be signed and that counsel for BP had the authority to confirm the agreement.

Relative to the necessity of a writing, our supreme court in *Felder v. Georgia Pacific Corp*, 405 So.2d 521, 523-24 (La.1981), has stated that:

> [T]he requirement that the agreement be in writing and signed by both parties does not necessarily mean that the agreement must be contained in one document. It would suffice that there be a written offer signed by the offerer and a written acceptance signed by the acceptor, even if the offer and the acceptance are contained in separate writings. In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement, as contemplated by La.C.C. art. 3071, has been perfected.

---

[6]We note that BP contends that indemnity provisions were also not included in the settlement agreement forwarded to LDNR. However, said provisions pertained to co-defendants' release and indemnity claims against one another and were unrelated to the settlement terms between Geer and BP.

7

The legal sufficiency of emails to constitute writings has also been addressed in the jurisprudence. In *Klebanoff*, 978 So.2d at 602, the second circuit considered whether a settlement agreement had been reached by the parties that was accomplished "through an exchange of emails" and reasoned as follows:

> There are two essential elements of a compromise: (1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences. *Trahan v. Coca Cola Bottling Co.*, 2004-0100 (La.3/2/05), 894 So.2d 1096. The requirement that the agreement be in writing does not necessarily mean that the agreement must be contained in one document. *Felder v. Georgia Pacific Corp., supra.* Where two instruments, read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement has been perfected. *Id.*; *Townsend v. Square*, 94-0758 (La.App. 4 Cir. 9/29/94), 643 So.2d 787. Compromises are favored in the law, and the burden of proving the invalidity of such an agreement lies with the party attacking it. *Rivett v. State Farm*, 508 So.2d 1356 (La.1987); *Kelly v. Owens, supra.*

Further, the court opined that "[t]he crucial issue is the parties' intent as expressed in the emails." *Id.* The court in *Klebanoff* ultimately found that "the parties' positions were clearly expressed in writings which are recognized under the La. Uniform Electronic Transactions Act, La. R.S. 9:2607."[7] *Id.* at 605.

Also persuasive herein is *Dozier v. Rhodus*, 08-1813 (La.App. 1 Cir. 5/5/09), 17 So.3d 402, *writ denied*, 09-1647 (La. 10/30/09), 21 So.3d 294, in which the appellate court considered an appeal of a trial court judgment granting a motion to enforce a settlement agreement. In reaching its decision, the trial court found that

---

[7]Louisiana Revised Statutes 9:2607 provides:

A. A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.

B. A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

C. If a law requires a record to be in writing, an electronic record satisfies the law.

D. If a law requires a signature, an electronic signature satisfies the law.

8

the elements required for a valid compromise were satisfied by an exchange of emails between the attorneys. On appeal, the first circuit, citing *Felder*, noted that the writing requirement for a compromise "can be satisfied by separate writings[.]" *Id*. at 409. The first circuit, therefore, found "that the legal requirements for an enforceable settlement agreement were met[,]" and it affirmed the trial court's grant of the motion to enforce the settlement. *Id*. at 410.

In *Succession of Wilson*, 13-164 (La.App. 3 Cir. 10/9/13) (unpublished opinion), this court also considered a motion to enforce a settlement agreement with issues raised therein that are very similar to those in the instant matter. In that case, it was asserted on appeal that:

> [T]he trial court was clearly wrong: 1) in enforcing the alleged compromise agreement between the parties because it was not reduced to a writing, or reciprocal writings, signed by both parties; 2) in allowing parol evidence as proof of the agreement between the parties; and 3) in finding that [one party's] attorney had the authority to bind [him] in a compromise agreement with the Succession.

*Id*., 13-164, p. 1. The Succession argued on appeal "that the emails between the attorneys, along with the documents attached thereto, succinctly set forth the terms of the settlement agreement and each party's obligation under that agreement." *Id*., 13-164, p. 3. Citing *Dozier*, this court found as follows:

> After review, we conclude that the trial court did not err in finding that the parties entered into a valid compromise agreement. When read together, the emails and documents exchanged between the attorneys for the Succession and Roscoe clearly outline the obligations owed by each of the parties along with the parties' mutual intent to put an end to their dispute. Further, that Roscoe's attorney reserved the right to review another document . . . does not change the fact that the parties had already agreed to all of the elements necessary to constitute a valid and enforceable settlement.

9

*Id.*, 13-164, p. 4.  We, therefore, affirmed the judgment of the trial court granting the motion to enforce the settlement agreement.[8]

In the instant case, the exchange of emails between counsel for Geer and counsel for BP, some of which are quoted above, culminated in a settlement agreement between the parties.  Thereafter, a document expressly identified by counsel for BP as a settlement agreement between Geer and BP was forwarded by BP to LDNR.  The emails together with the document satisfy the requirement that a compromise agreement be reduced to writing.

We likewise find no merit to BP's contention relative to counsel's authority to enter into the settlement agreement**.**  Although counsel for BP asserts that he lacked the requisite authority to bind his client, there is no evidence in the record supporting this contention.  To the contrary, the evidence is overwhelming that counsel negotiated a settlement agreement over the course of several months, agreed to postpone the trial date in light of a tentative agreement between the parties, forwarded and responded to numerous emails in furtherance of reducing the agreement to writing, and represented to LDNR that a settlement existed, all of which refute BP counsel's argument that he was without authority to negotiate on behalf of BP; and, the record contains no evidence to the contrary.

For these reasons, we agree with the trial court that there was a meeting of the minds between the parties as to a settlement agreement.  Additionally, we find no error in the trial court's ruling that a valid and enforceable compromise had been reached in accordance with La.Civ.Code art. 3071, and following.

In its final assignment of error, BP argues that "the oral reasons given by the Trial Court could be interpreted to hold that [La.]R.S. 30:29 supersedes the

---

[8]We also found no merit to the remaining assignments of error relative to parol evidence and lack of authority raised on appeal.

requirement that a compromise be signed by both parties." This was not the holding of the trial court. The trial court's oral reasons reveal that it recognized that the provisions of La.R.S. 30:29 do not require that the parties sign the document upon its submission to LDNR, or, for that matter, before the trial court approves it. Cognizant of the legal requirements for a valid and enforceable settlement agreement, the trial court correctly concluded that there was a meeting of the minds as to that agreement; further, the trial court correctly found the agreement, coupled with the emails exchanged between counsel, was sufficient to satisfy the writing requirement of the Louisiana Civil Code articles discussed above. We, therefore, find no merit to this contention.

**DECREE**

For the reasons assigned, the judgment of the trial court granting the motion to enforce settlement on behalf of Karen Wheat, individually and in her capacity as executrix for the Succession of Betty Hebert Geer, the Hebert-Geer Company, LLC, Nancy M. Toerner, Dorothy Hebert Tolbert, Marck Smythe, and Glenn W. Alexander is affirmed. Costs of this appeal are assessed to BP America Production Company.

**AFFIRMED.**