NORMAN JOSEPH PORCHE, JR.

VERSUS

SHARON DAWSEY PORCHE

NO. 23-CA-471

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 85,431, DIVISION "C"
HONORABLE CONNIE M. AUCOIN, JUDGE PRESIDING


April 24, 2024


**SUSAN M. CHEHARDY**
**CHIEF JUDGE**


Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Marc E. Johnson


**REVERSED AND REMANDED**
    **SMC**
    **JGG**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
NORMAN JOSEPH PORCHE, JR.
    Corey M. Oubre

COUNSEL FOR DEFENDANT/APPELLANT,
SHARON DAWSEY PORCHE
    Russell C. Monroe

**CHEHARDY, C.J.**

In this case involving a partition of community property, Sharon Dawsey Porche, appeals a June 28, 2023 judgment of the trial court granting an oral motion to enforce settlement agreement and a rule for sanctions brought by her ex-husband, Norman Joseph Porche, Jr., and a June 28, 2023 judgment homologating the partition of community property. For the following reasons, we reverse the trial court's judgments and remand the matter for further proceedings.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Norman Porche ("Norman") and Sharon Porche ("Sharon") were married on November 10, 1990, and a judgment granting Norman's petition for divorce pursuant to La. C.C. art. 103 was rendered on January 21, 2020. Norman filed a motion to partition community property and to set a trial on the merits of the community property partition on October 13, 2022. Later, a status conference was held, wherein deadlines were set for the filing of detailed descriptive lists and traversals, and a trial date was set for February 28, 2023.

By agreement of the parties, the February 28, 2023 trial date was converted to a status conference in an attempt to settle and formally resolve all issues related to the partition of community property, specifically any equalizing payment that might be due between the parties. Both Norman and Sharon were present in court with their respective counsel, Corey Oubre and Jonathan Rhodes. Following an extensive off-the-record bench conference, and as a result of the settlement discussions that took place between the parties and their counsel during the status conference, the trial court expressed its understanding on the record that Norman had extended to Sharon an offer to settle the entire community property partition for an equalizing payment of $10,000.00, and that the offer was good for twenty-four hours.

The transcript from the February 28, 2023 hearing reflects that neither of the parties were questioned by counsel or the trial judge as to their acquiescence or objection to any of the specific or substantive terms of the proposed settlement offer. However, it was noted by the trial judge that there remained a dispute between the parties concerning the value of the former marital home. In that regard, the trial court continued the trial of the community property partition to April 20, 2023, and ordered that, in the event the 24-hour period lapsed without an agreed upon settlement, an appraisal of the home was to be completed within 20 days, and that an appraisal report be exchanged between counsel prior to trial.

Following the status conference, Sharon rejected the $10,000.00 offer. The parties continued to negotiate a settlement through their respective counsel. Emails and text messages were exchanged between counsel, and in a March 3, 2023 text message which, according to Sharon, concerned only one substantive provision of the settlement, counsel for the parties agreed to an equalizing payment of $12,500.00 to be paid by Norman to Sharon to settle the community property partition.

On March 10, 2023, after counsel for the parties had purportedly reached a settlement agreement, Sharon sent an email to her attorney's office requesting that Mr. Rhodes withdraw as her counsel of record, stating: "Please take the funds for the new bill out of the trust and I will pay the difference. Tell Mr. Rhodes to withdraw." According to Sharon, she made similar written requests for Mr. Rhodes' withdrawal on March 15, March 16, and April 12, 2023.[1]

Believing that the offer to settle all matters related to the community property for an equalizing payment of $12,500.00 had been accepted by Mr. Rhodes on behalf of Sharon, Mr. Oubre emailed Mr. Rhodes on March 17, 2023,

---

[1] According to Sharon, on April 12, 2023, she wrote to Mr. Rhodes, "Attention, Mr. Rhodes. This is the fourth request for your official withdrawal from my case."

attaching the "DRAFT" of a nine-page document entitled, "Consent Judgment, Homologating Agreement, Partition of Community Property" (hereafter, "consent judgment"). In that e-mail, Mr. Oubre requested the VIN number of Sharon's vehicle and information regarding any bank accounts in her name. When Mr. Rhodes presented the draft consent judgment to Sharon, she refused to sign it, claiming that it was unacceptable due to errors in the document and that it was inconsistent with her understanding or desires for the settlement. Additionally, Sharon claimed that Mr. Rhodes never explained the contents of the nine-page consent judgment to her.

By agreement of counsel for both parties, a request was made to convert the scheduled April 20, 2023 trial to a status conference. At that time, Mr. Oubre, on behalf of Norman, made an oral motion to enforce the settlement agreement, and moved for sanctions and penalties. Mr. Oubre argued that the March 3, 2023 text messages exchanged between counsel, and the subsequent emails that followed, established a binding and enforceable agreement on behalf of the parties to settle all claims relative to the community property partition, with Norman paying an equalizing payment to Sharon in the amount of $12,500.00. Mr. Oubre also argued that it was further agreed between counsel that he was to prepare all paperwork related to the settlement, including the consent judgment.

At the April 20, 2023 status conference, Mr. Rhodes expressed on the record that Mr. Oubre had "summed up the last few weeks accurately," but explained that once Sharon received the draft consent judgment, she expressed that it was "inconsistent with her understanding or desires for the settlement" and no longer wished to sign the agreement. Mr. Rhodes then orally moved to withdraw as counsel of record for Sharon, which request was denied, given the pending trial and procedural posture of the case. Mr. Rhodes was ordered to remain as counsel of record until such time as the pending matters were resolved. The trial court then

set Norman's oral motion to enforce settlement agreement for trial on May 15, 2023. The trial court advised Sharon that at the May 15, 2023 trial, she would have the opportunity to dispute her acquiescence to the draft consent judgment and/or introduce any evidence regarding the agreement that she contended was inaccurate.

On May 15, 2023, prior to the commencement of trial, Mr. Rhodes re-urged his motion to withdraw. Sharon confirmed for the court that she had attempted to terminate Mr. Rhodes on several occasions and did not wish to be represented by him, but advised that she had not yet retained other counsel to represent her. After questioning Sharon and Mr. Rhodes, the trial judge determined that the March 3, 2023 text messages and emails exchanged between counsel, confirming the settlement of the community property partition, were exchanged seven days prior to Sharon's March 10, 2023 attempt to terminate Mr. Rhodes. Consequently, the trial judge denied Mr. Rhodes' oral motion to withdraw and proceeded with the trial on Norman's motion to enforce the settlement agreement and rule for sanctions.

Norman was then examined under oath by his counsel and acknowledged his authorization given to Mr. Oubre to increase the original $10,000.00 offer to settle made on February 28, 2023, to $12,500.00. Although Norman testified that it was his understanding that a binding agreement was reached between his counsel and Mr. Rhodes to settle the community property partition for $12,500.00, he acknowledged that he never signed the proposed consent judgement, as it was never presented to him for signature.

Sharon was called to testify as an adverse witness, at which time she invoked the Fifth Amendment. Sharon stated on the record that she was "not properly represented and that [the] nine-page document of the Consent Judgment

was never explained to [her] ... by Mr. Rhodes." The trial judge then recessed the trial giving Sharon time to retain additional counsel.

Trial of the matter continued on May 24, 2023. In the interim, however, Sharon had not retained additional counsel, despite the opportunity afforded to her by the trial court to do so.[2] Nevertheless, the trial proceeded.

Sharon was recalled as an adverse witness and asked whether she recalled that on February 28, 2023, a settlement offer was placed on the record "for $10,000.00 as an equalizing payment, that was good for 24 hours[?]" Sharon responded that on that date, it was her understanding that she had two choices— one to "get[] an appraisal on the property that was not complete," and the other was that Norman "had the funds of [sic] and had cash." Sharon testified that she "did not make a settlement agreement" on that day. She stated that based on what the trial judge stated that day in open court, it was her understanding that "there was a *settlement offer* for $10,000 for 24 hours. And after that, it's no good." [Emphasis added.]

Sharon further testified that she was aware that a "draft" document entitled, "Consent Judgment, Homologating Agreement, Partition of Community Property," was sent by Norman's counsel to Mr. Rhodes on March 17, 2023. According to Sharon, after she received and reviewed the draft consent judgment, she refused to sign it, explaining that "[t]his was an out-of-court settlement that failed. I did not sign or agree to the unfair terms of this nine-page draft document. There was no bank information given. No one explained this document to me … ." Sharon was then asked if she agreed that the draft consent judgment sent to her through her counsel was to "confirm an agreement on [an] equalizing payment and the allocation of the assets, with [Norman] paying [her] $12,500," and she replied,

---

[2] Despite Mr. Rhodes' efforts to withdraw as Sharon's counsel, and Sharon's desire that he withdraw, the trial judge ordered that he remain on the case for the duration of the trial.

"No. ... Mr. Rhodes was informed that I had to review it." Sharon claimed that after reviewing the proposed draft consent judgment, she emailed Mr. Rhodes the following on April 3, 2023:

> The draft has errors about a new identity on the document, or a son born to Norman - - there is no Norman III - - and is not in agreement with what you stated to me. It has, he waived his reimbursements. However, according to your e-mail, this is what I would get with him getting his reimbursements. I can't agree, what doesn't make sense. And the house be sold without repairs too?

When questioned by Mr. Rhodes, Sharon testified that she did recall that "other discussion[s]" with him had occurred after the February 28, 2023 hearing, and that in a March 14, 2023 email, she confirmed to him the VIN number of the vehicle Norman had given to her. Sharon claimed that she did not understand that the "request for the VIN number was made in order to complete the settlement offer paperwork[.]" Interestingly, when questioning Sharon at trial, Mr. Rhodes referred to the March 17, 2023 draft consent judgment received from Mr. Oubre as a "DRAFT of the proposed *settlement offer*:"

> Q. And do you recall me sending you a draft of the proposed settlement offer?
>
> A. As Mr. Oubre questioned, yes; and I responded to it, that I wasn't in agreement with it.

Sharon concluded her testimony by repeating that when she received the draft settlement offer from Mr. Rhodes, he never fully explained the terms of the agreement to her, the document contained inaccuracies, and that it was inconsistent with her understanding or desires for the settlement. She reiterated that she told Mr. Rhodes that she was not in agreement with the draft of the proposed settlement offer and, thus, refused to sign it.

Copies of the text messages and e-mails exchanged between counsel—which Norman contends resulted in a binding, enforceable settlement agreement between

himself and Sharon—were admitted into evidence. The actual draft consent judgment, however, which neither Norman nor Sharon signed, was not offered or admitted into evidence and is not a part of the record on appeal. Additionally, except for the equalizing payment, neither party was questioned by counsel at trial regarding any of the specific terms of the draft consent judgment and/or about their acquiescence or objections to those terms.[3]

At the close of the hearing, the trial court orally granted Norman's motion to enforce the settlement agreement and for sanctions, assigning oral reasons, and orally granted judgment homologating the partition of community property. In oral reasons, the trial court stated the following, in part:

> According to [Sharon's] testimony today, she did not attempt to terminate attorney Jonathan Rhodes until March 10th, well over seven days after this agreement was confirmed between counsel.
>
> [Sharon] did not testify as to any substantive disagreement with the written terms of the consent judgment. Specifically, what she noted was that there was a clerical error with respect to the Plaintiff's name being the "III" instead of, "Jr." and that there was missing bank account information. There was no indication that the terms of the agreement were substantially different than what had been agreed to on March 3rd.
>
> Further, [Sharon] continued to provide the necessary information required by the consent judgment, the proposed consent judgment.

In addition, with no evidence in the record that the trial court had ever actually reviewed the written terms of the draft settlement offer or consent judgment prepared by Mr. Oubre on behalf of Norman, the court ruled:

> I am going to order that [Norman] pay [Sharon] the amount of $12,500 as an equalizing payment to resolve any and to dispose of any and all claims arising from the community property partition trial and traversals, in accordance with the proposed consent judgment that was

---

[3]     The trial court did ask Sharon to iterate which specific written terms of the consent judgment she disagreed with; however, Sharon was unable to effectively do so.

> sent by Mr. Oubre to Mr. Rhodes in connection with this matter.
>
> I am further ordering that [Sharon] pay to [Norman] the amount of $1,200 in attorney's fees and any and all court costs associated with this hearing and Motion to Enforce the settlement. That payment is to be received within 30 days.
>
> [Norman], you are to prepare and submit the judgment of the Court, which will include any and all terms which were previously submitted to Mr. Rhodes, in connection with the consent judgment ... as an order of this Court.

In accordance with its oral reasons, the trial court issued a written judgment on June 28, 2023, granting Norman's motion to enforce community property settlement and rule for sanctions and ordering Sharon to pay $1,200.00 to Norman in attorney's fees and $400.00 in costs. The trial court issued a separate written judgment on June 28, 2023, homologating the partition of community property. This judgment, in essence, ostensibly incorporated the exact terms and conditions of the draft consent judgment, which was not admitted into evidence, and which Sharon refused to sign. The judgment, among other things, ordered the following:

> **IT IS HEREBY FURTHER ORDERED** that the parties have reached an agreement as to how to partition the assets and liabilities ... as well as how to settle any and all claims which each may have against the other for reimbursement.
>
>       ***
>
> **IT IS HEREBY FURTHER ORDERED** …[b]oth parties acknowledge that this partition of community property is fair and equitable to both parties. Additionally, both parties agree that they are hereby satisfied with the reimbursements to their respective estates ... Both parties acknowledge that each has had the benefit of independent legal counsel to review this settlement with full understanding of the document being signed.

Most significantly, the judgment ordered that:

> **IT IS HEREBY FURTHER ORDERED** that the parties agree and acknowledge that they are entering into this agreement freely and voluntarily, that they have ascertained and weighed all of the facts and

circumstances likely to influence their judgment herein; that they have been duly apprised of their respective legal rights with respect to a community property settlement; that all provisions of this agreement, as well as questions pertinent thereto, have fully and satisfactorily been explained to them; that they have given due consideration to such provisions in question and that they understand clearly and consent to all provisions of this agreement.

Lastly, as there was a trial and Sharon never signed the draft consent judgment, the trial court's judgment erroneously states:

**IT IS HEREBY FURTHER ORDERED** that by signing this Consent Judgment of Partition for submission to the Court without a hearing or trial, both parties acknowledge that its provisions accurately reflect the terms of an agreement which they have made with one another to amicably partition their community property and debts, and to satisfy in full all reimbursement, rental or other financial claims which each may have against the other.

Sharon's timely appeal of both June 28, 2023 judgments followed.

## ISSUES PRESENTED FOR REVIEW

On appeal, Sharon raises four assignments of error: (1) whether the trial court erred in enforcing a "transaction compromise" on all community property issues, and in rendering a judgment that adopted by reference, *in toto*, all provisions of Norman's proposed draft consent judgment, when neither the document, nor its substantive content, were offered or admitted into evidence at the trial, nor was the substance of the consent judgment proven at the hearing, nor discernable from the appellate record; (2) whether the trial court erred in issuing judgments enforcing a transaction compromise and homologating partition of community property between Norman and Sharon, when Norman failed to prove that Sharon had signed, or authorized Mr. Rhodes to bind her to, the draft consent judgment; (3) whether the trial court erred in finding that Norman proved the legal requirements of a transaction compromise binding upon the parties were satisfied; and (4) whether the trial court erred in awarding sanctions against Sharon.

**STANDARD OF APPELLATE REVIEW**

When a trial court rules on a motion to enforce a settlement agreement, it makes a factual determination as to whether a contract existed between the parties, and therefore, we review the trial court's determination under a manifest error or clearly wrong standard. *Quintanilla v. Whitaker*, 21-160 (La. App. 5 Cir. 12/1/21), 334 So.3d 892, 893; *Hancock Bank of La. V. Holmes*, 09-1094 (La. App. 5 Cir. 5/25/10), 40 So.3d 1131, 1134. This is because the trial court's determination of the existence, validity and scope of a compromise agreement depends on a finding of the parties' intent, an inherently factual finding. *Id*. However, where a legal error interdicts the fact-finding process, the manifest error standard no longer applies and, if the record is complete, an appellate court should make its own *de novo* review of the record. *Lam ex rel. Lam v. State Farm Mut. Auto Ins. Co.*, 05-1139 (La. 11/29/06). 946 So.2d 133, 135. Further, statutory interpretation is a question of law subject to *de novo* review. *Harvard v. Jeanlouis*, 21-00810 (La. 6/29/22), 345 So.3d 1005, 1007. Mixed questions of fact and law are also subject to the manifest error standard of review. *Marietta Trust v. J.R. Logging Inc.*, 16-1136 (La App. 1 Cir. 5/11/17), 225 So.3d 1144, 1147-48, *writ denied*, 17-1751 (La. 12/5/17), 231 So.3d 631.

**DISCUSSION**

### Enforceability of the "Draft Consent Judgment, Homologating Agreement, Partition of Community Property"

In her first three assignments of error, Sharon argues the trial court committed manifest error in finding that, pursuant to La. C.C. arts. 3071 and 3072, Norman proved the existence of a legally binding, enforceable agreement to settle all community property issues between himself and Sharon, when the substantive terms of that agreement were not recited into the record in open court nor testified

to by the parties, and when the draft consent judgment sought to be enforced was not entered into evidence at trial, or signed by either party. We agree.

A compromise or settlement is "[a] contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. C.C. art. 3071; *Chaisson v. Progressive Sec. Ins. Co.*, 12-352 (La. App. 5 Cir. 2/21/13), 110 So.3d 1147, 1148. To be enforceable, a compromise must be either reduced to writing and signed by the parties or their agents, or be recited in open court and be capable of transcription from the record of the proceeding. La. C.C. art. 3072;[4] *Trahan v. Coca Cola Bottling Co. United, Inc.*, 04-100 (La. 3/2/05), 894 So.2d 1096, 1104; *Sullivan v. Sullivan*, 95-2122 (La. 4/8/96), 671 So.2d 315, 318. A compromise agreement, which is not reduced to writing and evidenced by documentation signed by both parties, is unenforceable. *Hawthorne v. Barbier*, 02-1903 (La. App. 4 Cir. 2/19/03), 841 So.2d 28. As a written document is contemplated by a settlement agreement, the documentation evidencing the agreement must be signed by both parties. *Albarado v. State Farm Mut. Auto Ins. Co.*, 05-1084 (La. App. 3 Cir. 4/5/06), 926 So.2d 94. Until the parties sign a written document or documents evincing their consent to the terms of a proposed settlement agreement, a party is free to change his or her mind. *Coppage v. Transdev. Services, Inc.*, 20-419 (La. App. 4 Cir. 3/19/21), 320 So.3d 1206, 1121, *writ denied*, 21-549 (La. 6/8/21), 317 So.3d 328.

The requirement that a compromise be reduced to writing in order to be enforceable does not necessarily mean that the agreement must be contained in one document; however, the purpose of the writing requirement is to serve as proof of the agreement and acquiescence of the parties thereto and, as such, must be signed

---

[4] La. C.C. art. 3072 provides that "[a] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings."

by both parties, and aims at avoiding litigation over the terms of the settlement. *Southern Nights, Inc. v. Barnett*, 04-411 (La. App. 4 Cir. 8/18/04), 881 So.2d 1125, 1128. *See also Coppage*, 320 So.3d at 1121; *Morris, Lee & Bayle, LLC v. Macquet*, 14-1080 (La. App. 4 Cir. 3/23/16), 192 So.3d 198, 210. The writing requirement for a valid compromise is satisfied when emails and documents exchanged between counsel, when read together, clearly outline each parties' obligations to the other and evidence the parties' mutual intent to put an end to their dispute and acquiescence in the agreement. *See Dozier v. Rhodus*, 08-1813 (La. App. 1 Cir. 5/5/09), 17 So.3d 403, 409-410, *writ denied*, 09-1647 (La. 10/30/09), 21 So.3d 294; *Greer v. BP America Production Co.*, 14-450 (La. App. 3 Cir. 11/5/14), 150 So.3d 621, 626-628, *writ denied*, 14-2558 (La. 2/27/15), 159 So.3d 1070. A compromise settles only those differences that the parties clearly intended to settle. La. C.C. art. 3076.

The authority to enter into a compromise must be expressly given. La. C.C. art. 2997. It is well settled that a party's counsel of record does not have authority to settle a client's claim without the client's clear and express consent. *Quintanilla*, 334 So.3d at 893; *Coppage*, 320 So.3d at 1121. The general authority granted to an attorney in an attorney/client contract of employment to settle the client's case constitutes only the authority to negotiate a settlement. *Id*. Evidence of a "settlement" consisting only of correspondence between the attorneys is insufficient to bind the parties. *Lizama v. Williams*, 99-1040 (La. App. 5 Cir. 3/22/00), 759 So.2d 865, 868.

In the instant case, Sharon argues that she never accepted or agreed to the provisions of the draft consent judgment prepared by Mr. Oubre. She argues that it was never read into the record under oath, where it was susceptible of transcription, was never signed by her, and was never offered or admitted into evidence at trial. According to Sharon, the only substantive provision contained in

the text messages exchanged between counsel on March 3, 2023 concerned a $12,500.00 payment she was to receive from Norman. And, when presented with the proposed *draft* consent judgment, she advised Mr. Rhodes that she rejected it, refused to sign it, and never gave him authority to bind her to it. Sharon argues that the trial court erred in finding that the legal requirements for a valid compromise were met and in adopting in its entirety the proposed draft consent judgment prepared by Norman's counsel—the terms of which she had rejected and which the trial court had never seen or reviewed—as the judgment of the court, when no competent evidence proving the substance of the document was introduced at trial or exists in the record. By ordering Mr. Oubre to prepare the judgment of the court to "include any and all terms which were previously submitted to Mr. Rhodes in connection with the consent judgment," the trial court relied solely on counsel's representation as to what was actually contained in the March 17, 2023 proposed draft consent judgment.

In response, Norman contends that based on the exhibits introduced into evidence, without objection, at the May 15, 2023 and May 24, 2023 hearings, the requirements for a valid enforceable compromise have been met. Specifically, he argues that the text messages and email correspondence exchanged between the parties' counsel regarding the agreement to settle all outstanding community property claims for an "equalizing payment" of $12,500.00 to be paid by Norman to Sharon, included both an offer and an acceptance, sufficient to satisfy the "in writing" requirement under La. C.C. art. 3072. Norman further avers that the text messages and emails executed by Mr. Rhodes on March 3, 2023, when he allegedly had the authority of his client to settle the claims on her behalf, evidence a binding and enforceable agreement between himself and Sharon had been established.

The text messages and emails exchanged between counsel constitute the totality of the evidence submitted by Norman at trial as proof of the alleged enforceable agreement between Norman and Sharon. On March 3, 2023, the following text messages were exchanged:

> Mr. Rhodes: We're good at 12.5 plus you do the pleadings. Talk Monday?
>
> Mr. Oubre: Yes. This confirms our agreement.
>
> Mr. Rhodes: Yes sir. Enjoy the weekend.

On March 16, 2023, Mr. Rhodes texted Mr. Oubre, "How are we looking with settlement docs in Porche? My client is anxious."[5] Mr. Oubre responded, "Wrapping it up. Hopefully can send to you by tomorrow[,]" to which Mr. Rhodes replied, "Good deal. Thanks." Later that same day, Mr. Oubre texted Mr. Rhodes requesting the VIN number for Sharon's vehicle.

On March 17, 2023, Mr. Oubre emailed Mr. Rhodes, stating:

> Please find attached a DRAFT of the Consent Judgment for your review. I need the VIN for your client's vehicle as well as any credit cards in her name that she is assuming (if any) and any bank accounts she needs to list as her asset (I do not believe there are any). [Capitalization in original.][6]

As previously noted, while a copy of this email was admitted into evidence, without objection, the attached "DRAFT of the Consent Judgment" was not. Even when reading the text messages and emails exchanged between counsel together, we find that without more—*i.e.*, a copy of the nine-page draft consent judgment or testimony by the parties regarding the substantive terms of the agreement and their acquiescence thereto—they do not clearly outline the obligations the parties owed to each other, nor evidence the party's mutual intent to put an end to the community property dispute. In fact, we find there was nothing before the trial

---

[5] Interestingly, the record shows that by this date, Sharon had already requested that Mr. Rhodes withdraw from her case on three occasions, including such a request made that very day.

[6] Emails were also exchanged between counsel on May 30, 2023, regarding the status of settlement documents. On May 31, 2023, Mr. Rhodes emailed Mr. Oubre with the VIN number of Sharon's vehicle.

court that addressed the various obligations of the parties under that agreement, other than Norman's obligation to pay Sharon $12,500.00, and nothing evidencing the "mutual" intent of the parties to settle all of the remaining issues related to the community property partition. Even though the record contains Norman's testimony that his attorney had his authority to settle all claims for the equalizing payment of $12,500.00, Sharon's testimony at numerous hearings was emphatic that she was not in agreement with Norman's settlement offer, that it was inconsistent with her understanding or desires for the settlement, and that a settlement agreement had not been reached.[7]

We acknowledge that text messages and emails, when read together, may in some circumstances satisfy the requirement that a compromise agreement be reduced to writing. *See Dozier*, 17 So.3d at 409-410; *Greer*, 150 So.3d at 626-628. However, given the absence of a settlement document outlining the obligations of the parties or their acquiescence to its terms for this Court to review, we find the text messages and emails relied upon by Norman in this case were insufficient to satisfy the writing requirement of La. C.C. art. 3072. When the requirements of La. C.C. art. 3072 are not followed, Louisiana courts have generally declined to enforce a compromise. *See Sullivan v. Sullivan*, 95-2122 (La. 4/8/96), 671 So.2d 315, 318. Based on the record before us, we find the trial court manifestly erred in concluding that the exchange of text messages and emails between counsel alone culminated in an enforceable settlement agreement between Sharon and Norman, and thereby committed manifest error in granting Norman's motion to enforce settlement. Accordingly, the trial court's June 28, 2023 judgments granting

---

[7] While attorneys are presumed to have authority to negotiate a settlement proposal for their clients, they may not enter a binding settlement without the client's clear and express consent. *Coppage*, 320 So.3d at 1212. Here, the record suggests that Mr. Rhodes did not have Sharon's clear and express authority to enter into a binding agreement to settle the community property partition. *See, e.g., Tran v. Allstate Ins. Co.*, 01-675 (La. App. 4 Cir. 12/27/01), 806 So.2d 103, 106 (denying a motion to enforce settlement where "[t]here is nothing in the record to indicate that the plaintiff ever gave her attorney the express consent necessary to accept the terms of the settlement.").

Norman's motion to enforce settlement agreement and homologating the partition of community property are reversed.

***Sanctions***

An appellate court reviews trial court's rulings in an action for sanctions applying an "abuse of discretion," "manifest error," or "clearly wrong" standard of review. *Parish of Jefferson v. Levenson*, 96-1067 (La. App. 5 Cir. 5/14/97), 695 So.2d 1018, 1019.

The trial court imposed sanctions in the amount of $1,200.00 in attorney fees and $400.00 in costs against Sharon, presumably as a penalty for not signing what the court found to be a valid and enforceable settlement agreement. Having found the trial court manifestly erred in granting Norman's motion to enforce settlement agreement, we likewise find the trial court abused its discretion in assessing penalties and attorney's fees against Sharon.

**DECREE**

For the foregoing reasons, we reverse the trial court's June 28, 2023 judgments, and remand the matter for further proceedings.

**REVERSED AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**APRIL 24, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-CA-471**

**E-NOTIFIED**
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE CONNIE M. AUCOIN (DISTRICT JUDGE)
COREY M. OUBRE (APPELLEE)            RUSSELL C. MONROE (APPELLANT)

**MAILED**
NO ATTORNEYS WERE MAILED