# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-419


CECIL MITCHELL ADRIAN

VERSUS

KATHY LYNN ADRIAN



**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2010-5035
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**John Green, Jr.**
**Attorney at Law**
**1135 Hodges Street**
**Lake Charles, Louisiana 70601**
**(337) 990-0060**
**Counsel for Defendant/Appellee:**
        **Kathy Lynn Adrian**

**Todd H. Melton**
**Todd H. Melton, L.L.C.**
**Post Office Box 847**
**Lake Charles, Louisiana 70602-0847**
**(337) 439-2979**
**Counsel for Plaintiff/Appellant:**
        **Cecil Mitchell Adrian**

**KEATY, Judge.**

Cecil Mitchell Adrian appeals the community property judgment dividing the individual retirement accounts (IRAs) owned by him and his former wife, Kathy Lynn Adrian. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

In 2010, Mitchell and Kathy each filed a Petition for Divorce against the other. They had been married for twenty-one years and were the parents of a minor daughter.

The parties and their attorneys appeared in open court on January 4, 2011, at which time Kathy's attorney informed the trial court that the parties had prepared a memorandum of understanding. Thereafter, stipulations were put on the record in what both Mitchell and Kathy's attorneys agreed was a "global resolution, which includes not only the issues that were pending before the Court, but also a full-blown partition." With regard to the IRAs, Kathy's attorney stated, "They'll split the IRAs[.]" After the stipulation was put on the record, Mitchell answered, "Yes," when asked if he agreed to settle the issues in accordance with the stipulations. At the close of the hearing, the trial court stated that the stipulations would become the order of the court, and Kathy's attorney agreed to prepare the judgment.

After the passage of more than two years, Mitchell filed a Rule to Correct Judgment and/or for Rehearing and/or To Set Aside Judgment on October 22, 2013. Therein, he asserted that although the parties had reached a global stipulation on January 4, 2011, no judgment had been filed because of a dispute concerning the provision in the judgment that related to their respective IRAs. According to Mitchell, the first draft of the judgment prepared by Kathy's attorney provided that

he and Kathy would keep their own IRAs. Mitchell alleged, however, that after "various changes were requested that had nothing to do with the retirement accounts," Kathy's attorney prepared another judgment that provided that he and Kathy would split each other's IRA. A hearing on Mitchell's Rule to Correct Judgment took place on March 11, 2014. According to a minute entry, both of the parties and their attorneys were present, and, "[a]fter a brief pretrial conference, Judgment [was] rendered, read[,] and signed." The minute entry thereafter stated: "See Decree. For complete colloquy, see Court Reporter's transcript." The record on appeal does not contain a transcript dated March 11, 2014. The trial court signed a Stipulated Judgment on November 18, 2014,[1] which provided that Kathy and Mitchell would each get 50% of the IRA that each had in their name.

Mitchell timely filed a motion to devolutively appeal the Stipulated Judgment and is now before this court asserting that the trial court "made a legal error in signing the Stipulated Judgment filed herein on November 19, 2014, as there was clearly no 'meeting of the minds' between the parties regarding their IRA accounts."

## DISCUSSION

### *Standard of Review*

Before we address the merits of this appeal, we must determine the applicable standard of review. Mitchell insists that the trial court committed legal error such that we should conduct a de novo review of the record. Mitchell fails to offer any statutory or jurisprudential support for his contention that the trial court incorrectly applied any principles of law. This court has applied the manifest

---

[1] The typed judgment reflected that it had been rendered on January 4, 2011, and that it was read and signed "on the __ day of ___, 2013." The copy of the judgment that the trial court signed has a line drawn through "2013" and a handwritten signature date of November 18, 2014.

error/clearly wrong standard when reviewing a "trial court's determination that there existed a valid and enforceable settlement agreement." *Geer v. BP Am. Prod. Co.*, 14-450, p. 4 (La.App. 3 Cir. 11/5/14), 150 So.3d 621, 624-25, *writ denied*, 14-2558 (La. 2/27/15), 159 So.3d 1070. As we explained in *Geer*, our rationale for doing so was "'because the existence or validity of a compromise depends on a finding of the parties' intent, an inherently factual finding.'" *Id.* at 625 (quoting *Klebanoff v. Haberle*, 43,102, p. 4 (La.App. 2 Cir. 3/19/08), 978 So.2d 598, 601). Accordingly, we will employ the manifest error/clearly wrong standard of review.

## *Merits*

Mitchell contends that the trial court erred in signing the November 19, 2014 Stipulated Judgment. He submits that because there was no meeting of the minds between him and Kathy regarding the partition of their respective IRAs, there was no consent and, thus, no enforceable contract perfected between them. Mitchell submits that on January 4, 2011, when Kathy's attorney stated on the record that "They'll split the IRAs," everyone understood that to mean he and Kathy would each keep their own IRAs. He further submits that if the Stipulated Judgment is allowed to stand, Kathy will receive a windfall because she will get his interest in their former home plus half of his IRA, which he claims is worth substantially more than hers.[2]

Kathy counters that there was a meeting of the minds and that she and Mitchell entered the stipulations in order to resolve all of the outstanding issues between them. She contends that the numbers were fair and bargained for at the time the stipulations were entered. With regard to Mitchell's claim that the

---

[2] In his Rule to Correct Judgment and in his brief to this court, Mitchell asserts that his IRA was valued at $160,000, while Kathy's IRA was valued at $30,000. We note that the record does not contain any information about when or how those alleged values were determined.

Stipulated Judgment amounts to a windfall in her favor, Kathy refers to the transcript of the January 4, 2011 hearing, wherein she and Mitchell acknowledged and agreed that he was giving her his portion of the family home in exchange for her waiving her rights to permanent spousal support and contributions to education. She further notes that the values of their respective IRAs were not mentioned at the hearing and that Mitchell did not make any argument about the value of the IRAs until two and one-half years after the stipulation was rendered. Thus, Kathy contends that Mitchell's reliance on any "after the fact" calculation of the value of the IRAs in and of themselves, or in relation to the remainder of the stipulation, cannot be indicative of what the parties intended at the January 4, 2011 hearing. Kathy submits that Mitchell's interpretation of the phrase, "They'll split the IRAs," ignores the common definition of the word "split," as it clearly means "to divide." Kathy's appellate brief refers this court to two definitions of the word "split":  1) the Merriam-Webster definition which means "to divide into parts or portions:  as[] to divide between persons:  share" and 2) the Oxford Dictionary definition which means, "Break or cause to break forcibly into parts, especially into halves or along the grain."  Finally, Kathy submits that Mitchell is trying to take advantage of a mistake in the draft judgment in order to dodge the obligations that he knowingly assumed in the stipulation.

Mitchell's contentions on appeal rest on general contract law.  He cites *Bieber-Guillory v. Aswell*, 98-559, p. 7 (La.App. 3 Cir. 12/30/98), 723 So.2d 1145, 1149-50, wherein, citing La.Civ.Code art. 1927,[3] we held that "[w]hen there is no meeting of the minds between the parties, there is no consent, thus no enforceable

---

[3] Louisiana Civil Code Article 1927, provides, in pertinent part, that "[a] contract is formed by the consent of the parties established through offer and acceptance."

contract." Our reading of the January 4, 2011 transcript wherein the parties through their attorneys expressed their desire to enter into a "global stipulation which includes not only the issues that were pending before the Court, but also a full-blown partition" convinces us that the parties clearly intended to compromise and settle all of the matters between them. Thus, resolution of this appeal must be determined by application of the specific principles relative to the type of contract known as a compromise.

Louisiana Civil Code Article 3071 provides that "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." "Compromises are favored in the law, and the burden of proving the invalidity of such an agreement lies with the party attacking it." *Klebanoff*, 978 So.2d at 602.

> A judgment is a solemn adjudication of a court, which settles the rights of the parties, as disclosed by the record, and which passes on the matters presented for determination. *Cheramie v. Vegas*, 468 So.2d 810, 812 (La.App. 1st Cir.), *writ denied*, 470 So.2d 122 (La.1985). A consent judgment is a bilateral contract wherein the parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing the hope of gain against the fear of loss. *McDaniel v. McDaniel*, 567 So.2d 748, 750 (La.App. 2nd Cir.1990). A judgment, whether it results from the assent of the parties or is the result of a judicial determination after a trial on the merits, is and should be accorded sanctity under the law.

> The law sets forth the various methods whereby a judgment may be attacked. A party may sue to have the judgment declared a nullity for vices in either form or substance. LSA–C.C.P. art. 2001[-2006]; *Cheramie v. Vegas*, 468 So.2d at 813. For example, under LSA–C.C.P. art. 2002, a final judgment may be annulled if it is rendered against an incompetent person not properly served with process, against a defendant not served with process and who has not entered a general appearance, or by a court which does not have subject matter jurisdiction of the litigation. *Cheramie v. Vegas*, 468 So.2d at 813; *Sharp v. Brown*, 464 So.2d 12, 14 (La.App. 1st Cir.1984), *writ denied*, 467 So.2d 537 (La.1985). Also, a final

> judgment can be annulled if obtained through fraud or ill practices. LSA–C.C.P. art. 2004; *Homer National Bank v. Nix*, 566 So.2d 1071, 1075 (La.App. 2nd Cir.), *writ denied*, 569 So.2d 985 (La.1990); *Sharp v. Brown*, 464 So.2d at 15. However, absent an attack via one of the well-delineated methods of attacking a final judgment, the judgment maintains the effect of the law between the parties.

*Preston Oil Co. v. Transcon. Gas Pipe Line Corp.*, 594 So.2d 908, 913 (La.App. 1 Cir. 1991). See also, *Bonaventure v. Pourciau*, 577 So.2d 742, 745 (La.App. 1 Cir. 1991), wherein the first circuit held:

> A judgment is the determination of the rights of the parties in an action. La.C.C.P. art. 1841. A *final* judgment must be written, signed and identified by appropriate language. La.C.C.P. arts. 1911, 1912 and 1918. A substantive amendment of a final judgment can only be made by a timely application for a new trial, La.C.C.P. art. 1971[-1979,] an action for nullity, La.C.C.P. art. 2001[-2006,] or a timely appeal, La.C.C.P. art. 2081[-2088].

In the instant case, Mitchell is trying to set aside a Stipulated Judgment which was submitted after a hearing in which he and Kathy confirmed their intent to enter into a complete and total compromise of all the claims pending before the trial court. Thus, the burden is on him to show that the compromise was invalid. *Klebanoff*, 978 So.2d 598. Moreover, because the compromise was reduced to a judgment and signed by the trial court, Mitchell can only attack it via the methods authorized by law. *Preston Oil*, 594 So.2d 908; *Bonaventure*, 577 So.2d 742.

At all times relevant herein, Mitchell and Kathy were represented by counsel. Moreover, both Mitchell and Kathy affirmatively agreed in open court at the January 4, 2011 hearing that they understood the stipulation that had been put on the record and that they were settling all the issues between them.[4] While the stipulation did not go into great detail regarding the parties' respective IRAs, they

---

[4] *Cf. Baudin v. Baudin*, 97-120, p. 3 (La.App. 3 Cir. 5/21/97), 696 So.2d 86, 87, wherein this court reversed a trial court judgment which was based on the alleged agreement of the parties where the transcript showed "confusion and lack of agreement" on the part of the defendant.

agreed to "split the IRAs." Mitchell's claim that the parties all understood that to mean that he and Kathy would each keep their own IRA simply ignores the plain meaning of the word "split."[5] In addition, once the Stipulated Judgment was signed by the trial court, Mitchell failed to seek a new trial or to assert the judgment's nullity, either in that court or in this court on appeal. Finally, the record shows that the arguments that Mitchell now makes on appeal were presented to and rejected by the trial court when Mitchell's Rule to Correct Judgment was heard on March 11, 2014. Given the foregoing, we conclude that Mitchell has failed to show that the trial court manifestly erred in signing the Stipulated Judgment.

## DECREE

The judgment of the trial court is affirmed. All costs of this appeal are assessed against Cecil Mitchell Adrian.

**AFFIRMED.**

---

[5] Louisiana Civil Code Article 2047 provides, in part, that "[t]he words of a contract must be given their generally prevailing meaning."