# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# 16-844


**MELVIN R. LUCAS, JR., ET UX.**

**VERSUS**

**RAPIDES HEALTH CARE SYSTEM, L.L.C., ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 248,884
HONORABLE GEORGE CLARENCE METOYER JR, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John E. Conery, and D. Kent Savoie, Judges.


**REVERSED AND REMANDED.**

**Sage Middleton**
**3102 Enterprise Boulevard**
**Lake Charles, Louisiana  70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
     **Melvin R. Lucas, Jr.**
     **Evangeline Lucas**

**Robert L. Bussey**
**Bussey & Lauve, LLC**
**Post Office Drawer 8778**
**Alexandria, Louisiana  71306-1778**
**(318) 449-1937**
**COUNSEL FOR INTERVENOR/APPELLEE:**
     **The Louisiana Patient's Compensation Fund and Oversight Board**

**Randall M. Seeser**
**Kay H. Micheils**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, Louisiana  71301**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Rapides Healthcare System, L.L.C. D/B/A Rapides Regional Medical Center**

**Gregory N. Wampler**
**607 Main Street**
**Pineville, Louisiana  71360**
**(318) 473-4220**
**COUNSEL FOR APPELLEES:**
     **John E. Morton and Morton Law, LLC**

**CONERY, Judge.**

Before this court is an appeal of the trial court's judgment dated August 15, 2016, granting a motion by the intervenor, the Louisiana Patient's Compensation Fund (LPCF), to enforce the settlement of a medical malpractice action filed by Melvin R. Lucas, Jr. seeking damages from the Rapides Healthcare System, L.L.C. d/b/a Rapides Regional Medical Center (Rapides). For the following reasons, we reverse and remand to the trial court for further proceedings.

## FACTS

After the submission of his claim to a medical review panel pursuant to the provisions of La.R.S. 40:1299.41 and the receipt of the panel's opinion on September 11, 2013, Melvin and Evangeline Lucas timely filed suit on November 25, 2013. Their petition sought damages against Rapides for a pressure ulcer Mr. Lucas developed in March 2011 while he was in the care of Rapides for strep pneumonia. Mrs. Lucas is a native of the Philippines, and English is not her first language. She was not married to Mr. Lucas at the time of the alleged malpractice, but was married to him by the time suit was filed. Rapides responded to the petition by filing a dilatory exception of lack of procedural capacity and a peremptory exception of no right of action based on the Lucas' failure to plead whether or not they were married at the time of the alleged incident.

On June 17, 2015, the parties engaged in mediation. Mr. Lucas was represented by attorney John Morton at that time, but claimed he could not attend because of medical reasons. He sent Mrs. Lucas to attend in his place. As the couple was not married at the time of the alleged injury to Mr. Lucas, she was not a proper party to the litigation. However, Mrs. Lucas had a power of attorney signed by Mr. Lucas allegedly granting her the authority to participate in the mediation

and possibly settle the lawsuit. During the mediation an offer was conveyed to Mr. Lucas by Mrs. Lucas. Mr. Lucas did not decline the offer or issue a counteroffer during the mediation, but then, according to Mr. Morton, he called Mr. Lucas, who allegedly agreed verbally to the offer. Nothing was placed in writing and no written settlement agreement was signed at that time.

Shortly thereafter, Mr. Lucas discharged Mr. Morton and asked him for his file materials. Pursuant to Mr. Morton's motion to withdraw as counsel the trial court signed an order on July 7, 2015, allowing Mr. Morton to withdraw as counsel for Mr. Lucas. Obviously, no settlement agreement had been completed or signed at that time.

On October 22, 2015, Mr. Morton filed an intervention seeking his fees and costs based on a contingency fee contract signed by Mr. Lucas. The trial court signed an order on October 22, 2015, allowing Mr. Morton to intervene in the case. In the same order allowing the intervention, Mr. Morton requested the trial court further order, "that all parties and/or their counsel of record are ordered to appear for a status conference on November 30, 2015 at 9:30" in the trial court's chambers. Mr. Lucas was sent a subpoena, requested by Mr. Morton on October 23, 2015, requiring him to attend the status conference. Again, Mr. Morton was no longer counsel for Mr. Lucas and his interests at this time were adverse to his former client, as he was obviously trying to get Mr. Lucas to agree to the settlement offer made during mediation. In any event, Mr. Lucas was unable to attend the status conference due to illness. Mrs. Lucas, who still possessed a valid power of attorney for Mr. Lucas, attended in his place.

There is nothing in the record to support Rapides' assertion that a settlement conference took place between the parties and the trial court prior to the "status

2

conference" on November 30, 2015. No motion to set a "settlement conference" appears in the record. The order setting the "status conference" on November 30, 2015, in chambers was part of Mr. Morton's motion to intervene in the lawsuit.

At the status conference on November 30, 2015, former counsel for Mr. Lucas, Mr. Morton, and counsel for Rapides, Mr. Seeser, sought to place an alleged "confidential settlement agreement" on the record and to have the trial court confirm by the testimony of Mrs. Lucas, acting pursuant to a power of attorney, that Mr. Lucas had agreed to settle his case. Mrs. Lucas did appear on behalf of Mr. Lucas and her power of attorney was presented to the trial court, and was filed into the record as a part of the proceedings by the trial court. However, no "confidential settlement agreement" was placed on the record, under seal or otherwise.

Again, Mr. Morton no longer represented Mr. Lucas and, in fact, had filed a motion to intervene in Mr. Lucas' lawsuit, seeking his full fee and expenses based on an alleged settlement offer procured before he withdrew as counsel. At this point in the proceedings, Mr. Morton had no authority whatsoever to speak on behalf of either Mr. or Mrs. Lucas.

A colloquy occurred on the record between the trial court and Mr. Morton, intervenor, and Mr. Seeser, attorney for Rapides, which stated in pertinent part:

> MR. MORTON:
>
> > The parties have discussed the matter and there is – we think a binding settlement, unless – the Court can question Ms. Lucas about the matter.
>
> BY THE COURT:
>
> > All righty. Ms. Lucas, I need you to raise your right hand in a minute.

3

having been first duly sworn, testify (sic) as follow[s]:

*** OUESTIONED BY THE COURT ***

Q       All right.  Do you understand what you[] are doing here today?

A       Yes, sir.

Q       Okay.  You do have the Power of Attorney for Mr. Lucas?

A        Yes, Your Honor.

Q       Okay.  Where is that Power of Attorney?  Do you have a copy
        of it?

A        Yes, sir.

         . . . .

         BY THE COURT:

                Okay let's file this into the record and we'll make a[]
                copy of it and we'll put it into the record.


*** OUESTIONING CONTINUES BY THE COURT ***

Q       Do you understand ma'am that the – the settlement agreements
        are open to you and your husband, so that you'll know exactly
        what's going on.

A       Yes, Your Honor.

Q       Do you understand that you have to go to Mr. Seeser's office
        to execute the documents that will provide the basis of the
        settlement?

A       Yes, Your Honor.

         . . . .

                Yes.

         . . . .

4

Q       Okay.  Now, then no one will – no one party will be able to negotiate this settlement unless all parties are present and all parties acknowledge the settlement documents.  Okay?

A       Yes, Your Honor.

Q       So you can't settle . . . without him.  And you can't settle with him without her.  So again, y'all are all lumped together.  It's either y'all all agree or [you] don't agree.  Okay?

A       Yes, sir.

         . . . .

                BY THE COURT:

                        All right.  When can she come to your office to uh - if she's got the documents.  I don't know …

                BY MR. SEESER:

                        I – I'm not- do you have any documents Ms. Lucas?  Have you been given any – that …

                BY MR. MORTON:

                        Your Honor, before my office closed **I think I sent them to her** but she probably needs a fresh copy. (Emphasis ours.)

                BY MR. SEESER:

                        Oh, what we can do – you can come by today and sign the documents, right now, or you can make an appointment, and you tell me when you want to be there.

                ….

                BY MR. SEESER:

                        And Judge, just for the record, until we get both the settlement documents signed the CMS Model Forms and a W-9,  I can't even request my check from my client.

                BY THE COURT:

> I understand that and they need to understand that. That the check can not (sic) be requested until those documents are forwarded to the appropriate parties.
>
> . . . .
>
> So the sooner you get it done – if get it done today - the sooner you get it done the sooner you can get your money and be finished with it. Okay?

BY MS. LUCAS:

> Yes, sir.

The colloquy makes clear that there would be no settlement unless and until the "confidential settlement agreement," not placed of record, was signed by all parties. The trial court then placed a copy of the power of attorney giving Mrs. Lucas the authority to settle on behalf of Mr. Lucas into the record and stated, "Yeah, So that we will have in the record that she was in fact authorized to speak on his behalf since he is not here. Okay." The power of attorney placed into the record grants the authority to settle the case on behalf of Mr. Lucas, but does not contain any specifics as to the terms and conditions of the settlement. The trial court then stated with regard to the previously discussed settlement documents and the need to file them in the record, "And with that – um – I will be expecting those documents shortly."

No "settlement terms" were discussed on the record. Mrs. Lucas never contacted Mr. Seeser, counsel for Rapides, in order to sign the alleged "settlement documents," nor did she or Mr. Lucas ever sign a written settlement agreement. If, indeed, they had agreed to a settlement, all that was required was for Mr. Lucas or Mrs. Lucas, using her power of attorney, to sign the actual settlement documents.

Clearly, they did not do so, and on March 31, 2016, new counsel enrolled to represent Mr. Lucas in the litigation.

On July 8, 2016, the LPCF, who was not an initially named party defendant, intervened in the case pursuant to La.R.S.40:1299.44, now La.R.S. 40:1231.4, effective June 2, 2015, to assert their right to "review and approve settlements where it [the LPCF] is affected."[1]  In this case, the LPCF was obligated to pay under the terms of the alleged "confidential settlement agreement" its initial statutory maximum amount of $100,000.  Thus, without the enforcement of the "confidential settlement agreement," the LPCF could be at risk of having to defend a case where the amount of damages from the LPCF could exceed that amount.  Accordingly, the LPCF filed a motion to enforce the "confidential settlement agreement" that had allegedly been agreed upon at the November 30, 2015 "status conference."  There is nothing in the record to show that the LPCF was ever at that status conference, much less had agreed to a settlement.

On August 4, 2016, Mr. Morton, intervenor as former counsel for Mr. Lucas, also filed a motion to adopt the pleadings and arguments of the LPCF, which was granted by the trial court on August 18, 2016.  Both the the LPCF and Mr. Morton were not parties to the lawsuit, but merely intervenors, yet both were seeking to "enforce" an alleged "settlement" between Mr. Lucas and Rapides.  The terms of the so-called "confidential settlement agreement" were then placed in the court

---

[1]The LPCF filed their statutory invention pursuant to La.R.S. 40:1299.44.  This court notes that La.R.S. 40:1299.41-49, which includes La.R.S. 40:1299.44, was redesignated as La. R.S. 1231.1 to 40:1231.10, and is now included in La. R.S. 40:1231.4.  The redesignated statute became effective on June 2, 2015, prior to the status conference on November 30, 2015, and the LPCF's motion to enforce the alleged settlement on August 15, 2015.  The "HISTORICAL AND STATUTORY NOTES" under La.R.S. 40:1231.4 provide, "the provision of this Act enacting [La.] R.S. 40:1299.44(C)(5)(a) and (e) are procedural and interpretative in nature and are intended to clarify and codify existing law."

record for the first time by two intervenors who were not actual parties to the litigation.

Mr. Lucas, through his counsel, filed an opposition to LPCF's motion to enforce settlement. Rapides then filed a motion to file "under seal" its reply to plaintiff's opposition and all attachments and exhibits, which included as Exhibit A, the alleged unsigned settlement document entitled, "RECEIPT, RELEASE, INDEMITY AND CONFIDENTIALLY AGREEMENT." An order placing under seal the Rapides' reply memoranda and exhibits, as well as all filings and hearings related to the LPCF's motion to enforce settlement, was signed by the trial court on August 16, 2016.

Through new counsel, Mr. Lucas opposed the LPCF's motion to enforce the "confidential settlement agreement," arguing that Mrs. Lucas did not "consent" to any settlement on the record at the status conference, the terms of the alleged "confidential settlement agreement" were not recited in open court, it was not signed, and therefore a valid settlement was never perfected as required by La.Civ.Code art. 3072. Mr. Lucas also sought to strike as untimely Mr. Morton's motion to adopt the LPCF's motion to enforce the "confidential settlement agreement" pursuant to La.Dist.Ct.R. 9.9(b).

On August 15, 2016, the trial court held a hearing on the motion to enforce the "confidential settlement agreement" allegedly reached at the status conference on November 30, 2015. The trial court granted the motion, without reasons, hence there are no factual findings. The trial court also denied Mr. Lucas' motion to strike Mr. Morton's allegedly untimely motion to enforce the "confidential

8

settlement agreement."[2] The trial court's judgment granting the motion to enforce the "confidential settlement agreement" was signed in open court on August 15, 2016, and stated:

> **ORDERED, ADJUDGED AND DECREED** that an enforceable settlement was reached between the parties in open court on November 30, 2015, which settlement is subject [to] all terms and conditions of the written settlement documents prepared by counsel for Rapides Healthcare System, L.L.C. d/b/a Rapides Regional Medical Center and previously provided to the Lucas' through their former attorney.

Mrs. Lucas was also ordered to execute the written documents within ten days, and, if she failed to execute the documents as ordered, then the terms of the written documents would "be deemed enforceable by all parties and that the settlement proceeds be disbursed in accordance with the settlement documents or alternatively deposited into the registry of court for disbursement in satisfaction of subsequent interventions and liens."

Mr. Lucas now appeals the trial court's judgment of August 15, 2016, enforcing the "confidential settlement agreement" allegedly reached at a status conference on November 30, 2015.

## ASSIGNMENTS OF ERROR

Mr. Lucas presents the following assignments of error for our review.

1. Judge Metoyer manifestly erred in allowing an Intervenor to join and participate in Oral Argument after they failed to abide by District Court Rules.

2. Judge Metoyer manifestly erred in finding that a compromise was confected on November 30, 2015 per Louisiana Civil Code Article 3072.

---

[2]Although the record reflects that the trial court denied Mr. Lucas' motion to strike Mr. Morton's motion to adopt the position of the LPCF, that ruling is not contained in the judgment on appeal. Further, the August 15, 2016 judgment granting the LPCF's motion to enforce the "confidential settlement agreement" does not mention Mr. Morton, who was allowed by the trial court to adopt the motion filed by the LPCF.

9

## LAW AND DISCUSSION

### *Standard of Review*

When a party seeks to enforce a settlement agreement, this court explained the applicable standard of review as follows:

> This court has applied the manifest error/clearly wrong standard when reviewing a "trial court's determination that there existed a valid and enforceable settlement agreement." *Geer v. BP Am. Prod. Co.*, 14-450, p. 4 (La.App. 3 Cir. 11/5/14), 150 So.3d 621, 624–25, *writ denied*, 14-2558 (La. 2/27/15), 159 So.3d 1070. As we explained in *Geer*, our rationale for doing so was " 'because the existence or validity of a compromise depends on a finding of the parties' intent, an inherently factual finding.'" *Id.* at 625 (quoting *Klebanoff v. Haberle*, 43,102, p. 4 (La.App. 2 Cir. 3/19/08), 978 So.2d 598, 601).

*Adrian v. Adrian*, 15-419, pp. 2-3 (La.App. 3 Cir. 11/4/15), 178 So.3d 297, 299-300.

In *Hayes Fund For The Frist United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592, p. 8 (La. 12/08/15), 193 So.3d 1110, 1115-16, the supreme court reiterated the duty of appellate courts in a manifest error review and stated in pertinent part:

> In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Cenac v. Public Access Water Rights Ass' n*, 02-2660, p. 9 (La. 6/27/03), 851 So.2d 1006, 1023. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La.4/14/04), 874 So.2d 90, 98. Rather in reversing a trial court's factual conclusions with regard to causation, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993).
>
> This test requires a reviewing court to do more than simply review the record for some evidence, which supports or controverts

the trial court's findings. The court must review the entire record to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Parish Nat. Bank v. Ott*, 02-1562, pp. 7-8 (La.2/25/03), 841 So.2d 749, 753-54. The issue to be resolved on review is not whether the judge or jury was right or wrong, but whether the judge's or jury's factfinding conclusion was a reasonable one. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989); *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973).

Errors of law, however, are reviewed de novo. *See Foti v. Holliday*, 09-93 (La. 10/30/09), 27 So.3d 813. Accordingly, when reviewing an issue of law, we "render[] judgment based on the record without deference to the legal conclusions of the lower courts." *Id.* at 817.

### *Application of Louisiana Civil Code Articles 3071 and 3072*

In a dispute over whether a settlement has been perfected, La.Civ.Code art. 3071 provides, "A compromise is a contract whereby the parties, through concessions made by one or more of them settle a dispute or an uncertainty concerning an obligation or other legal relationship."[3] Further, La.Civ.Code art. 3072 requires that "[a] compromise shall be made in writing or **recited in open court**, in which case the recitation **shall be susceptible of being transcribed from the record of the proceedings**." (Emphasis added.)

In *Sullivan v. Sullivan*, 95-2122, p. 4 (La. 4/8/96), 671 So.2d 315, 318, the supreme court found that an agreement dictated to a court reporter in an attorney's office and later transcribed did "not constitute a recitation 'in open court' for purposes of [then La.Civ.Code art.] 3071." The *Sullivan* court also discussed the purpose of La.Civ.Code art. 3071, now also La.Civ.Code art. 3072:

---

[3]In 2007, La.Civ.Code art. 3071 was revised and the second paragraph of Article 3071 became Article 3072. Official Revision Comment (a) for La.Civ.Code art. 3071 states, "This Article is new. It is not intended to change the law." Louisiana Civil Code Article 3072 "preserved the requirement of Article 3071 of the Louisiana Civil Code of 1870 that a compromise must be reduced to writing. It is not intended to change the law." Official Revision Comment (a) for La.Civ.Code art. 3072.

> La.C.C.art. 3071 is placed in the code to insure proper proof of extra-judicial agreements. Inasmuch as there is no judgment on the merits outlining the obligations each party has to the other when a case is settled by the parties, the law has seen fit to require the compromise agreement, which sets out those obligations, to be reduced to writing to serve as proof of the agreement and the acquiescence therein.

*Sullivan*, 671 So.2d at 317 (quoting *Felder v. Georgia Pacific Corp.*, 405 So.2d 521, 523 (La.1981).

Additionally, the supreme court in *Sullivan* then discussed the requirement that a document be signed in order to qualify as a "writing" under former Article 3071, and enforced under now La.Civ. Code arts. 3071 and 3072 stating, "**Obviously, to serve as written proof of the agreement and obligations of both parties, and their acquiescence therein, the written agreement must be signed by both parties, obligating both to do what they have agreed on.**" *Sullivan*, 671 So.2d at 317 (quoting *Felder*, 405 So.2d at 523. It is undisputed that the "confidential settlement agreement" discussed in general terms with the court at the status conference on November 30, 2015, was not signed by any of the parties to the alleged settlement. Therefore, we must determine if the "confidential settlement agreement," referenced only in general at the status conference, can be enforced under La.Civ.Code arts. 3071 and 3072.

### The Status Conference

It is undisputed that the actual terms of the "confidential settlement agreement" were not placed on the record in open court at the November 30, 2015 status conference. Therefore, the exact terms of the "confidential settlement agreement," which were contained in the unsigned confidential settlement documents, were not "susceptible of being transcribed from the record of the proceedings" as required by La.Civ.Code art. 3072.

12

Defense counsel and the intervenor argue that it was impossible to place the terms of the settlement on the record, as that action would have voided the "confidentially provisions" of the settlement. However, considering the past history of the litigation, and the reality that Mr. Morton no longer represented Mr. Lucas, and, indeed, had interests adverse to his former client, there certainly was no legal impediment to placing the "confidential settlement agreement" under seal in the record at the time of the hearing. Indeed, if not signed by the parties, the "confidential settlement agreement" was required to be recited in open court subject to transcription as required by La.Civ.Code art. 3072 as interpreted by *Sullivan* and its progeny. If the parties wished the settlement to be confidential, they could have requested that the "confidential settlement agreement" and terms be placed under seal, as Rapides did later.

Moreover, for some reason, not fully explained on the record, Mr. Lucas was not even present in open court so that he could be questioned as to his understanding and acceptance of the terms of the "confidential settlement agreement." Mrs. Lucas, who was his wife by that time, was acting pursuant to a power of attorney, but she was not questioned as to the terms of the "confidential settlement agreement" either.

Defendant, Rapides, obviously anticipated at the time of the status conference before the court on November 30, 2015, that Mrs. Lucas, acting pursuant to the power of attorney from Mr. Lucas, would shortly come to the office of Mr. Seeser, counsel for Rapides, and sign the actual confidential settlement documents. However, it is also undisputed that Mrs. Lucas never appeared at Mr. Seeser's office to sign the actual documents, hence there was no written settlement

13

agreement. The LPCF, Rapides, and Mr. Morton are relying solely on La.Civ.Code art. 3072 in order to enforce the "confidential settlement agreement."

In *Lemoine v. Thornton*, 13-889, p.8 (La.App. 3 Cir. 2/12/14), 161 So.3d 666, 671, *writ denied*, 14-541 (La. 4/25/14), 138 So.3d 648, a panel of this circuit stated that "a compromise is valid only if the parties share a meeting of the minds as to their intent." Hence, even if this court were to determine that it was the intent of the parties to settle, there is nothing on the record to show that either Mr. Lucas, or Mrs. Lucas, pursuant to the power of attorney, actually had agreed to the terms of the confidential settlement documents prior to or at the status conference. The "confidential settlement agreement" was not filed under seal, nor was there actual acknowledgement on the record that Mr. or Mrs. Lucas were actually apprised of the contents at the time of the status conference. Nowhere in the appellate record of the status conference does it reflect that Mrs. Lucas actually stated on the record that she had received and/or reviewed a copy of the "confidential settlement agreement," much less that Mr. Lucas agreed to the terms thereof.

Former counsel for Mr. Lucas, Mr. Morton, did testify at the hearing on the motion to enforce the "confidential settlement agreement" held on August 15, 2016, that he had spoken with Mrs. Lucas and discussed the terms with her prior to her testimony at the status conference on November 30, 2015, and that she understood and agreed to those terms. Further, Mr. Morton also testified at the hearing on the motion to enforce "confidential settlement agreement" on August 15, 2016, that he had spoken by phone to Mr. Lucas on the day of the status conference on November 30, 2015, and Mr. Lucas had "consented" to the "confidential settlement agreement." Mr. Morton further stated that he had discussed the implications of the confidentially of the settlement agreement with

14

Mr. and Mrs. Lucas, and that was the only reason the actual terms of the "confidential settlement agreement" were not put into the record. Again, he was no longer representing them and had interests adverse to those of his former clients. He obviously wanted the "confidential settlement agreement" to go through so that he could collect his fee and expenses pursuant to the intervention.

Moreover, the transcript of the status conference on November 30, 2015, does not corroborate Mr. Morton's claims. In fact, as previously stated, the record itself is not clear as to just what was explained or communicated to Mr. or Mrs. Lucas concerning the specifics of the alleged "confidential settlement agreement," or whether, in fact, either or both had ever agreed to the terms thereof. The colloquy on this issue provides:

> BY THE COURT:
>
> > All right. When can she come to your office to uh - if she's got the documents. I don't know …
>
> BY MR. SEESER:
>
> > I – I'm not- do you have any documents Ms. Lucas? Have you been given any – that …
>
> BY MR. MORTON:
>
> > Your Honor, before my office closed **I think I sent them to her but she probably needs a fresh copy.** (Emphasis added.)

This statement by Mr. Morton at the status conference, at which the "confidential settlement agreement" was supposedly agreed upon, clearly contradicts the testimony given by Mr. Morton at the hearing on the motion to enforce the "confidential settlement agreement" held on August 15, 2016. Again, the terms of the "confidential settlement agreement" were never placed on the

15

record subject to transcription at the status conference on November 30, 2015, as required by La.Civ.Code art. 3072.[4]

The case of *City of Baton Rouge v. Douglas*, 07-1153, (La.App. 1 Cir. 2/8/08), 984 So.2d 746, *writ denied*, 08-939 (La. 6/20/08), 983 So.2d 1284, is instructive on the issue of the importance of placing the actual settlement terms on the record when a settlement is recited in open court. Unlike this case, in that case, the settlement terms were actually placed on the record in open court, transcribed, and then the plaintiff later refused to sign the written settlement documents:

> On March 9, 2007, the parties and their attorneys engaged in a settlement conference with the trial court. After the conference, the parties and their attorneys entered a settlement agreement on the record in open court. At the hearing, the parties acknowledged that they had been well-represented by counsel and that they had reached an agreement disposing of all the issues referenced in a written stipulation, including the City/Parish's payment of back wages, severance, and retirement contributions. In the stipulation, Mr. Douglas agreed to release the City/Parish from all possible pending claims, to retire from the City/Parish employment, and to never again seek or accept employment with the City/Parish.

> The written stipulation detailing the dollar amounts agreed to be paid and outlining the terms and conditions of the settlement were prepared by the City/Parish. A copy of the stipulation was received by the trial court, the parties, and all counsel, and it was filed into evidence at the March 9, 2007 hearing. At the hearing, the trial court questioned Mr. Douglas on the record regarding his understanding that the settlement agreement "puts an end to all of the litigation between you and the City/Parish." Mr. Douglas indicated that he understood and that he desired to put an end to the litigation. Mr. Douglas asked a question about the stipulation that he must "never" seek employment with the City/Parish in the future, and it was explained to him that it was one of the City/Parish's conditions of

---

[4]Both Mr. and Mrs. Lucas executed sworn affidavits which allegedly directly contradicted Mr. Morton's statements, but the trial court sustained an objection and those affidavits were not allowed in evidence. A "proffer" was made, and though the affidavits are in the appellate record, the issue of the admissibility of the affidavits was not challenged on appeal and cannot be considered.

settlement.  Mr. Douglas indicated on the record, "[t]hat's agreeable" and the trial court stated, "[a]ll right.  This case is fully settled."

*Id.* at 747-48.

Mr. Douglas later sent a letter to the trial court, his counsel, and the City/Parish through its counsel "declaring that he was refusing to accept the terms of the settlement because he no longer agreed to retire and sever any future employment relationship with the City/Parish."  *Douglas*, 984 So.3d at 748.  The City/Parish filed a motion to enforce the settlement of March 9, 2007, and the trial court, after a hearing on the motion, granted the City/Parish's motion to enforce the settlement agreement which had been **recited in open court** in accordance with the terms of an earlier written stipulation.  The stipulation of the parties was filed into the record at the hearing of the motion to enforce settlement.  The transcript of the hearing demonstrates that the judge questioned the parties about the settlement and all parties agreed on the record.  The trial court found that there was a valid settlement, and a panel of our sister circuit affirmed the trial court's ruling enforcing the settlement, stating:

> Although this particular settlement agreement was not put into a writing that was signed by the parties, the agreement was detailed in a written stipulation that was offered and accepted into evidence at an open court hearing in which the trial court, the attorneys, and the parties all acknowledged the existence of the stipulation and the parties agreed on the record that they desired to fully settle their differences.

*Douglas*, 984 So.2d at 749.

The appellate court further determined that prior to the hearing placing the settlement on the record, all parties and the trial court had participated in a settlement conference which resulted in the stipulation that was placed on the record at the hearing.  All of the terms were fully disclosed to all parties and their

17

counsel, and there was no objection on the record to the terms of the stipulation and settlement. *See Id.*

In *Morris Lee and Bayle, LLC v. Macquet*, 14-1080 (La.App. 4 Cir. 3/23/16), 192 So.3d 198, a panel of the fourth circuit found that in a case where it was undisputed that the explicit terms of a compromise agreement and the parties explicit consent thereto were recited on the record in open court, a valid and enforceable settlement was perfected pursuant to La.Civ.Code art. 3072.

The record before this court on appeal demonstrates that the alleged "confidential settlement agreement" was discussed only in general terms in open court at the status conference on November 30, 2015, and the terms were not placed on the record by the parties or reviewed by the trial court, under seal or otherwise. The terms of the "confidential settlement agreement" were thus not capable of being transcribed as required by the clear wording of La.Civ. Code art. 3072.

In *Kee v. Cuco's Inc.*, 92-685 (La.App. 3 Cir. 5/5/93), 618 So.2d 12 (La.App. 3 Cir. 1993), a settlement agreement was recited on the record by the attorneys of the parties, but the tape of the proceedings was lost. Therefore, the only existing record of the settlement agreement was a minute entry of the trial court. A panel of this court found that a minute entry did not constitute a "writing" for the purposes of an enforceable settlement pursuant to former article 3071, now La.Civ.Code arts. 3071 and 3072.

In *Abadie v. Metro. Life Ins. Co*., 97-932, 97-940, (La.App. 5 Cir. 4/9/98), 712 So.2d 932, *writ denied*, 98-1268 (La. 6/26/98), 719 So.2d 1059, a panel of the fifth circuit found that no valid, enforceable settlement was perfected. The terms of the settlement agreement were never put in writing. Therefore, like the instant

18

case, the terms of the settlement were required to be recited in open court and capable of being transcribed as required by what is now La.Civ.Code art. 3072. Although the settlement was recited in open court, it did not include a full disclosure of the terms of the settlement so that all parties involved were fully apprised of their rights and obligations. *Troxclair v. Parish of St. Charles*, 450 So. 2d 759 (La.App. 5 Cir. 1984).

Neither Mr. nor Mrs. Lucas actually signed the alleged "confidential settlement agreement" containing the actual terms and conditions thereof. Without either a signed writing or a stipulation of the actual terms of a settlement recited and agreed upon in open court that is capable of transcription, we find that there was no valid settlement between the parties. *See* La.Civ.Code art. 3072.

Accordingly, the trial court erred in granting the LPCF and intervenor, Mr. Morton's, motions to enforce the settlement. We reverse the judgment in its entirety and remand the matter to the trial court for further proceedings. Since we have reversed the judgment of the trial court and found no valid settlement agreement existed between the parties, we need not consider Mr. Lucas' first assignment of error concerning Mr. Morton's participation in the hearing on the motion to enforce settlement.

## CONCLUSION

For the foregoing reasons, the trial court's judgment dated August 15, 2016, granting the Louisiana Patient's Compensation Fund motion to enforce the settlement is reversed in its entirety. This matter is remanded to the trial court for further proceedings consistent with this opinion. All costs of the trial court and all costs of this appeal are assessed equally to the intervenors the Louisiana Patient's Compensation Fund and Mr. John E. Morton.

19

**REVERSED AND REMANDED.**